# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

OCEAN ACCIDENT AND GUARANTEE CORPORATION, LTD. v.
LEWIS N. GLOVER, EXECUTOR.

November 14, 1935.

Present, All the Justices.

The opinion states the case.

*Kern & Kern,* for the plaintiff in error.

*Moore & Williams,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action was brought by Lewis N. Glover, executor, to recover the sum of $1,500 from the Ocean Accident and Guarantee Corporation, Ltd., under a policy of insurance

issued to plaintiff's testator, Eugene Glover. A trial by jury was had and resulted in a verdict for the plaintiff, which verdict the trial court affirmed.

The policy issued by the defendant covered "loss or disability resulting directly, independently and exclusively of all other causes, from bodily injuries effected solely through accidental means."

The insured, at the date of his death, was clerk of the circuit court and prior thereto had been engaged in the insurance business; he was fifty-seven years of age and seemingly in perfect health.

The uncontroverted evidence is that insured had a pimple or boil inside the nose; that in an effort to relieve the pain resulting therefrom, he picked the pimple or boil with a "knife or needle"; that following this puncture of the pimple or boil, inflammation set in and insured consulted his physician, who, upon examination, found "rough, jagged punctures" in the boil or pimple. Insured immediately was placed in a hospital and died shortly thereafter from septicaemia resulting from the infection being carried into the blood stream following the puncture of the boil or pimple.

The preponderating evidence is that death was produced by the germ known as staphylococcus which before being punctured was confined in the boil or pimple, and which, as a result of the act of insured, was injected into the blood stream; that it was not usual for septicaemia to follow the puncturing of bruising of a boil or pimple.

Dr. McKee, an expert witness introduced by the defendant, in response to questions propounded by the trial court, testified in part as follows:

Q. "Do I understand also a person may tamper with a boil, squeeze or break it and still not cause septicaemia at all?

A. "That is usual.

Q. "In other words—it usually does not cause it?

A. "Yes.

Q. "When it does cause it it is unusual rather than usual?

A. "Yes."

The defendant assigns as error the action of the court in giving and refusing instructions and in refusing to set aside the verdict.

The determinative question is one of law—whether or not the injuries resulting in the death of the insured were effected by accidental means and fell within the coverage clause of the policy of insurance.

Webster's New International Dictionary (1933) gives the following definition of "accident" and "accidental":

"Accident: n. An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event; chance; contingency, often; an undesigned and unforeseen occurrence of an afflicted or unfortunate character; casualty, mishap; as, to die by accident.

"Accidental: adj. Taking place not according to the usual course of things. Synonyms: undesigned; unintended; chance; unforeseen; unexpected; unpremeditated; dependent; conditional; accidental applies to that which happens without design or wholly outside the regular course of things. 'Incidental' (see event) implies a real and, it may be, even a designed relation, but one which is secondary and nonessential; as, an incidental result, benefit, incidental expense."

Mr. Justice Blatchford, in the leading case of *U. S. Mutual Accident Ass'n* v. *Barry,* 131 U. S. 100, 9 S. Ct. 755, 762, 33 L. Ed. 60, says: "The court properly instructed them (the jury) that * * * the term 'accidental' was used in the policy in its ordinary popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if in the act which precedes the injury something unforeseen, unexpected, unusual, occurs which

produces the injury, then the injury has resulted through accidental means."

We think that the verdict of the jury, based upon competent evidence, is conclusive of plaintiff's contention that the death of the insured which resulted from his act of puncturing the boil or pimple, was not the natural or probable consequence of the insured's act, but came about unexpectedly and by chance. There is no proof that insured knew that such an act would produce such dire consequences.

In the opinion of the medical experts who testified in the case, it is a common practice for one to "pick" a boil, and while it is a dangerous proceeding from a medical standpoint, it is not a common occurrence for septicaemia to follow such an act.

While the question presented is one of first impression here, it is not a new one, as shown by the decided cases.

In *Continental Casualty Company* v. *Willis* (C. C. A.) 28 Fed. (2d) 707, 709, 61 A. L. R. 1069, we read:

"The deceased was insured against septicaemia resulting from the happening of an external, violent, and purely accidental event, and whether the breaking of the skin of the deceased's finger was caused by pricking it, or was the unexpected and unusual result of the proper use of the disinfectant, in either case it was an accidental event, and came within the meaning of the words of the policy."

A case very much in point is that of *Lewis* v. *Ocean Accident and Guarantee Corporation,* from the Court of Appeals of New York and reported in 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129. The opinion, delivered by Mr. Justice Cardozo, is so concise and in our view so conclusive of the point in issue that we feel justified in quoting it at length:

"The plaintiff's testator, John F. Bailey, held a policy of insurance issued by the defendant. It covered 'loss or disability resulting directly, independently, and exclusively of all other causes from bodily injuries effected solely through accidental means.' The question is whether

injuries resulting in death were effected by accidental means within the meaning of the policy. The trial judge dismissed the complaint. The Appellate Divisiin (180 App. Div. 935, 167 N. Y. S. 1110), two justices dissenting, affirmed.

"On July 6, 1915, the insured had a pimple on his lip. A friend who lunched with him says that it looked like an ordinary pimple at that time. A day or so later it was larger and more inflamed. On July tenth the insured consulted a physician. The physician's testimony is that there was then a punctured wound in the lip, which had inflamed and infected the deep tissues. The lip was opened by the physicians, and remedies were applied. They were of no avail. The infection spread through the cheek toward the eye. A week later, July seventeenth, the insured became paralyzed and blind. He died the next day. His death was due to inflammation of the brain produced by the germ known as *staphylococcus aureus*. There is little doubt that the germ came from the infected pimple. If the infection was the result of accident, the defendant is liable.

"We think there is testimony from which a jury might find that the pimple had been punctured by some instrument, and that the result of the puncture was an infection of the tissues. If that is what happened, there was an accident. We have held that infection resulting from the use of a hypodermic needle is caused by 'accidental means.' *Bailey* v. *Interstate Casualty Co.,* 8 App. Div. 127, 40 N. Y. S. 513; Id., 158 N. Y. 723, 53 N. E. 1123; *Marchi* v. *Aetna Life Ins. Co.,* 140 App. Div. 901, 125 N. Y. S. 1130; Id., 205 N. Y. 606, 98 N. E. 1108. The same thing must be true of infection caused by the puncture of a pimple. Unexpected consequences have resulted from an act which seemed trivial and innocent in the doing. Of itself, the scratch or the puncture was harmless. Unexpectedly it drove destructive germs beneath the skin, and thereby became lethal. To the scientist who traces the origin of disease there may seem to be no accident in all this.

'Probably it is true to say that in the strictest sense, and dealing with the region of physical nature, there is no such thing as an accident.' Halsbury, L. C., in *Brintons* v. *Turvey*, L. R. 1905 A. C. 230, 233. But our point of view in fixing the meaning of this contract must not be that of a scientist. It must be that of the average man. *Brintons* v *Turvey, supra; Ismay* v. *Williamson,* L. R. 1908 A. C. 437, 440. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test—the one that is applied in the common speech of men—is also the test to be applied by courts. *United States Mutual Acc. Ass'n* v. *Barry,* 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60; *Lewis* v. *Iowa State Trav. Men's Ass'n* (D. C.) 248 Fed. 602; *Western Comm. Trav. Ass'n* v. *Smith,* 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; *Brintons* v. *Turvey, supra; Ismay* v. *Williamson, supra; H. P. Hood & Sons* v. *Maryland Casualty Co.,* 206 Mass. 223, 92 N. E. 329, 30 L. R. A. (N. S.) 1192, 138 Am. St. Rep. 379; *Aetna Life Ins. Co.* v. *Portland Gas & Coke Co.,* 229 Fed. 552, 144 C. C. A. 12, L. R. A. 1916D, 1027; *Omberg* v. *United States Mut. Acc. Ass'n,* 101 Ky. 303, 40 S. W. 909, 72 Am. St. Rep. 413; *Hiers* v. *John A. Hull & Co.,* 178 App. Div. 350, 352, 164 N. Y. S. 767; *Bailey* v. *Interstate Casualty Co., supra."

It is to be observed that the defendant in the case at bar was the defendant in the *Lewis Case* and practically the same contentions are made in both cases. The identical question was involved in two other cases in which Lewis, Ex'x, was plaintiff, and the contention of the plaintiff was upheld and a recovery allowed. See cases of *Interstate Business Men's Acc. Ass'n* v. *Lewis* (C. C. A.), 257 Fed. 241; *Iowa State Traveling Men's Ass'n* v. *Lewis* (C. C. A.), 257 Fed. 552, 7 A. L. R. 1134, note.

Upon the whole case we are of opinion that the judgment should be affirmed.

*Affirmed.*