# Richmond

FLORENCE SMITH v. COMBINED INSURANCE COMPANY OF AMERICA.

June 12, 1961.

Record No. 5252.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

The opinion states the case.

*David B. Worthy* (*Hutcherson & Greer,* on brief), for the plaintiff in error.

*George B. Dillard and Williard R. Finney,* for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

This is an action to recover on an accident policy issued by Combined Insurance Company of America on the life of Earl B. Smith, denominated the "Insured," in favor of Florence Smith, his wife. The Insurance Company filed a denial of liability on the ground that the insured had not died "as a result of an accident" within the meaning of the policy. There was a trial before a jury and at the conclusion of the plaintiff's evidence and again at the close of all of the evidence the defendant Insurance Company moved to strike the plaintiff's evidence on the ground, among others, that it failed to show that the death of the insured resulted from an accident within the meaning of the policy. These motions were overruled and after the trial court had granted a number of instructions, to which no objections were taken by either party, the jury found a verdict for the plaintiff in the amount specified in the policy. The defendant moved to set aside the verdict on the same grounds assigned in its motions to strike. In a written opinion the trial court held that under the evidence adduced the death of the insured had not resulted from an accident within the meaning of the policy. Consequently, it set aside the verdict, entered a final judgment for the defendant, and from that judgment the plaintiff has appealed. The sole assignment of error is that the court erred in setting aside the verdict.

The facts are undisputed. The policy was issued on September 25, 1956, and the premiums were paid by Mrs. Smith as they became due. It insured the *named insured* "against loss resulting directly and independently of all other causes from accidental bodily injuries received while this policy is in force * * * ." Then follow these provisions pertinent to the present case:

"SECTION B. LOSS OF LIFE, SIGHT, AND LIMBS INDEMNITY—ANY ACCIDENT.

"If Such Injuries shall be sustained by the Insured and shall be *effected in any accident*:

\* \* \* \* · \* \* \* \* \* \*

"While within any burning building in which the Insured is burned by fire or suffocated by smoke; or

\* \* \* \* \* \* \* \* \* \*

"While at home, at work, at play, or in any other activity whatsoever;

and shall \* \* \* within ninety days from the date of the *accident* causing Such Injuries result directly and independently of all other causes in any of the losses enumerated in this Section B the Company will pay, in lieu of all other indemnity, for:

"LOSS OF LIFE ............................$1200.00

\* \* \* \* \* \* · \* \* \* \*

"Indemnity for loss of life will be payable to the beneficiary if surviving the Insured, \* \* \*." (Emphasis added.)

On July 25, 1959, the day of his death, Smith, who was a fugitive from justice on a charge of murder, took refuge in a barn in Franklin county. The enforcement officers, including two State troopers, surrounded the building. When the troopers undertook to enter the barn they were fired upon and one was seriously wounded by a rifle shot fired by Smith. Shortly thereafter a second shot was heard from the barn but no one outside of the building was struck. When other officers arrived on the scene a "public address system" was installed and Smith was urged to come out of the building and surrender, but refused to do so. Over a period of some four or five hours, more than twenty tear gas projectiles or bombs were discharged through the door and windows into the building. During this operation the barn caught fire and was burned. After the fire the body of Smith, burned beyond recognition, was found and identified. Near the body was found the metal portion of a rifle and one discharged shell in the chamber.

It is agreed that the officers did not intend to set fire to the barn. While the tear gas projectiles were labeled "noninflammable," there is evidence that they have been known to cause fires.

The determinative question is whether the "bodily injuries" sustained by the insured and of which he died, were "effected in any accident" within the meaning of the policy.

In *Ocean Accident & Guarantee Corp.* v. *Glover*, 165 Va. 283, 285, 182 S. E. 221, 222, we adopted this definition:

*"Accident*: An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency, often; an undesigned and unforeseen occurrence of an afflicted or unfortunate character; casualty, mishap; as, to die by accident."

"The generally accepted rule is that death or injury does not result from accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury." 29A Am. Jur., Insurance, § 1167, p. 313. See also, 45 C. J. S., Insurance, § 753-b, p. 781.

The principle is thus stated in *Scarborough* v. *World Insurance Co.*, 244 N. C. 502, 94 S. E. 2d 558, 561:

"Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result may be such as to constitute an accidental injury. 45 C. J. S., Insurance, § 753, p. 779."

In accord with this principle it is generally held that if the insured voluntarily provokes or is the aggressor in an encounter, and knows, or under the circumstances should reasonably anticipate, that he will be in danger of death or great bodily harm as the natural or probable consequence of his act or course of action, his death or injury is not caused by an accident within the meaning of such a policy.

As we said in *Mutual Benefit Health & Accident Ass'n* v. *Ryder*, 166 Va. 446, 450, 185 S. E. 894, 896, "One who assaults another, or voluntarily enters into an affray and is hurt, has not suffered an accident." See also, *Scarborough* v. *World Insurance Co., supra*, 94 S. E. 2d, at page 561; *McCrary* v. *New York Life Ins. Co.*, 8 Cir., 84 F. 2d 790; *Beckley Nat. Exchange Bank* v. *Provident Life & Accident Ins. Co.*, 121 W. Va. 152, 2 S. E. 2d 256; Couch, Cyclopedia of Insurance Law, Vol. 5, § 1158, p. 4068.

While there is a conflict of authority on the subject, the weight of authority is that even where, as here, the policy contains no provision exempting liability for injury or death resulting from "violation of law," an insured who is killed or injured under such circumstances, and as a direct result of his own criminal acts, has not suffered an

accident. 29A Am. Jur., Insurance, § 1183, p. 326; Annotation, 23 A. L. R. 2d 1105. This is upon the principle that by his conduct the insured has voluntarily placed himself in a position where he knows or should know that he is likely to be killed or injured.

Similarly, it is held that one who is killed or injured while resisting or fleeing from arrest has not suffered an accident. See *Sellars* v. *John Hancock Mut. Life Ins. Co.*, Mo. App., 149 S. W. 2d 404; *Rousseau v. Metropolitan Life Ins. Co.*, 299 Mass. 91, 11 N. E. 2d 921; *Piotrowski* v. *Prudential Ins. Co. of America*, 141 Misc. 172, 252 N. Y. S. 313; Annotation, 23 A. L. R. 2d 1112.

■ The application of these principles precludes a recovery in the present case. Here the insured, by his conduct in resisting arrest, in taking refuge in this building, and deliberately wounding an officer of the law, voluntarily put himself in a position where he knew or should have known that death or serious bodily injury would be the probable consequence of his acts. In such a situation his death was not effected by an "accident" within the meaning of the policy.

■ The plaintiff argues that the action of the trial court in setting aside the verdict was erroneous because, she says, such action, as indicated by its written opinion, was "at odds with" its instructions; that since the instructions were not objected to by either side they became the law of the case and were binding on the court as well as the jury, "irrespective of whether they are right or wrong."

There is no merit in this contention. Although the instructions given without objection, like all instructions, were binding on the jury, this does not mean that the court was powerless while the case was under its control to correct errors in its rulings on them. It is well settled in this State that on a motion for a new trial involving the correctness of the instructions, the court may reconsider the instructions, although not objected to, and if they are found to be incorrect and calculated to mislead the jury, may set aside the verdict. Burks Pleading and Practice, 4th Ed., § 306, p. 550; *Id.*, § 324, p. 596; *Stevenson* v. *Wallace*, 27 Gratt. (68 Va.) 77, 93; *Bull* v. *Commonwealth*, 14 Gratt. (55 Va.) 613, 625-6. Here, the motion to set aside the verdict involved the right of the plaintiff to maintain her action on the policy and the propriety of granting any instructions in her favor. The trial court, after mature consideration, concluded that despite its former rulings the action could not be maintained. In this situation, it was its plain duty to set aside the verdict and enter a final judgment for the defendant. Code, § 8-352.

Since we agree with the finding of the trial court that the plaintiff was not entitled to recover in her action on the policy, the judgment is

*Affirmed.*