**Sandra Trusty RUNGE, Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Appellee.**

**No. 75–1702.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1976.

Decided March 5, 1976.

---

W. Scott Street, III, Richmond, Va. (Woodward, Wood & Street, Richmond, Va., on brief), for appellant.

Alexander Wellford, Richmond, Va. (Wellford & Taylor and Christian, Barton, Epps, Brent & Chappell, Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

This is a suit on double indemnity clauses of two insurance policies. On the date of his death, plaintiff's husband, Wilbur L. Runge, Jr., was insured by Metropolitan under two policies with a total face value of $19,000. Metropolitan paid the face amounts but declined to pay double on plaintiff's contention that death resulted from injuries sustained "solely through violent, external and accidental means" within the meaning of the double indemnity clauses of the policies. The district court entered summary judgment in favor of Metropolitan. We affirm.

### I.

Sandra Trusty Runge is the widow of Wilbur L. Runge, Jr., and is the beneficiary named in both policies issued by Metropolitan. Runge died under very bizarre circumstances. Briefly stated, Runge hung himself in the course of engaging, as the district court found:

> [I]n an unusual autoerotic practice in which he was seeking to heighten the experience of masturbation by stimulation of certain nerve centers in the brain through the asphyxial process. The decedent had tied the electrical extension cord in such a fashion that when hanging from it the balls of his feet would rest on the floor, and by standing on his toes he would be able to vary the pressure on his neck. The decedent placed the noose formed in the electrical cord around his neck and stepped from the chair or the stool to the floor, and then proceeded to masturbate. At the time he reached orgasm the asphyxia was accentuated to the degree that the decedent lost consciousness, his body relaxed, and he was hanged to death.

It is agreed that the insured's death was not suicide, that he was not murdered, and that he did not die of natural causes. Metropolitan has stipulated that the insured's

death was "violent" and "external" within the meaning of the double indemnity clauses, but denies that death resulted from "accidental means." Thus the sole issue is whether or not Runge died by "accidental means."[1] We are inclined to think he did not—as that phrase has been construed by the Virginia Supreme Court.

■ In *Smith v. Combined Insurance Co. of America*, 202 Va. 758, 120 S.E.2d 267 (1961), the insured was a fugitive who had taken refuge in a barn. The deceased fired upon law enforcement officers and seriously wounded at least one policeman. After refusing to surrender, tear gas grenades accidentally set the barn on fire, and the deceased was burned to death. In denying recovery upon the deceased's accidental death policy, the Virginia Supreme Court held that:

> Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result may be such as to constitute an accidental injury.

202 Va. at 761, 120 S.E.2d at 269.

■ In this case, the court concluded, the insured had "voluntarily put himself in a position where he knew or should have known that death or serious bodily injury would be the probable consequence of his acts. In such a situation his death was not effected by an 'accident' within the meaning of the policy." 202 Va. at 762, 120 S.E.2d at 269.

In *Wooden v. John Hancock Mutual Life Insurance Co.*, 205 Va. 750, 139 S.E.2d 801 (1965), the deceased insured provoked an argument with another which precipitated a struggle for a pistol. During the struggle, the gun discharged accidentally, and the insured was shot to death. Again, the Virginia Supreme Court ruled that the death had not been the result of "accidental means." The court noted:

> [D]eath or injury does not result from accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury.

> .    .    .

> In accord with this principle it is generally held that if the insured voluntarily provokes or is the aggressor in an encounter, and knows, or under the circumstances should reasonably anticipate, that he will be in danger of death or great bodily harm as the natural or probable consequence of his act or course of action, his death or injury is not caused by an accident within the meaning of such a policy.

205 Va. at 755, 139 S.E.2d at 804–05.

■ On the basis of the district court's findings of fact, which are supported by the record and are not clearly erroneous, we hold that Wilbur L. Runge, Jr., did not die as a result of "accidental means." Runge deliberately placed his neck into a noose which he himself had designed and constructed, having first locked the doors to his house to prevent intrusion, and at a time when interruption was unlikely. He then intentionally and deliberately self-induced asphyxia by hanging himself in the noose, lost consciousness, and died. Death, under these circumstances, was a natural and foreseeable, though unintended, consequence of Runge's activity. The decision of the district court will be

*AFFIRMED.*

---

1. On appeal Mrs. Runge contends that the issue is whether the district court correctly or incorrectly "read into" the insurance policies an implied exclusion for voluntary exposure to a known risk where no express exclusion appeared anywhere in the policies. We are inclined to think this may be a more accurate formulation of the question than the more traditional "accidental means" test. But it is not for us to say. In this diversity case we are to apply Virginia law as written by its highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).