## Richmond

LOLLIE R. HARRIS, ADMINISTRATRIX OF THE ESTATE OF
CARSBY JULIAN HARRIS, JR., DECEASED

v.

BANKERS LIFE AND CASUALTY COMPANY

June 12, 1981.

Record No. 800386.

Present: All the Justices.

*James Clayton Lewis (William L. Perkins, III; Sacks, Sacks, Perkins & Larkin,* on brief), for appellant.
*Frederick M. Quayle* for appellee.

PER CURIAM.

Lollie R. Harris (plaintiff), the administratrix of the estate of her husband, Carsby Julian Harris, Jr. (Harris), instituted this action against Bankers Life and Casualty Company claiming that Bankers Life had breached a contract insuring her husband against accidental death or dismemberment. Bankers Life denied liability on the ground that Harris did not die as the result of an accident. The trial court, at the conclusion of the plaintiff's evidence, sustained Bankers Life's motion to strike the evidence and ruled, as a matter of law, that the insured's death was not accidental. The sole issue presented is whether the trial court erred in striking the plaintiff's evidence.

The insurance policy at issue did not define "accident." In construing similar policies, we have said that an accident is " '[a]n event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; . . . .' " *Ocean Accident, etc. Corp.* v. *Glover,* 165 Va. 283, 285, 182 S.E. 221, 222 (1935). Furthermore:

t is generally held that if the insured voluntarily provokes or is the aggressor in an encounter, and knows, or under the circumstances should reasonably anticipate, that he will be in danger of death or great bodily harm as the natural or probable consequence of his act or course of action, his death or injury is not caused by an accident within the meaning of such a policy.

*Smith* v. *Insurance Company,* 202 Va. 758, 761, 120 S.E.2d 267, 269 (1961). *Accord, Byrd* v. *Life Ins. Co. of Va.,* 219 Va. 824, 252 S.E.2d 307 (1979); *Wooden* v. *John Hancock Mutual,* 205 Va. 750, 139 S.E.2d 801 (1965).

The decisive question, therefore, is whether, as a matter of law, Harris should have reasonably foreseen that his actions would put him in danger of death or great bodily harm. In resolving this question, we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff.

Harris and the plaintiff were married in 1957 and became estranged in 1974, at which time Harris moved into the home of Elizabeth Parker. Until his death on January 7, 1978, Harris and Parker lived together and Harris served as surrogate father to two of Parker's children. Parker testified that during this period, she and Harris had a "pretty good relationship" and did not have serious fights. She also testified that prior to the incident in question, she had never injured him.

Parker was the only witness offering testimony concerning the events surrounding Harris' death. According to her testimony, she and Harris visited a friend on January 7, 1978. She had two or three alcoholic drinks and Harris "might have had one or two" during the visit. An argument ensued in the taxi on the way home. When they arrived home, Parker entered the house and told her children not to open the door for Harris. Nevertheless, Harris entered the house and began disciplining Brenda, one of Parker's children, for failing to open the door. After hearing Brenda scream, Parker went downstairs and found Harris hitting Brenda. Parker intervened, and Harris pushed her out of his way but did not resume hitting Brenda. Parker then picked up the closest weapon available, a knife hanging on the wall, and fatally stabbed Harris.

There was no evidence that Harris bruised or otherwise physically injured Brenda during the affray or that Harris had any rea-

son to believe Parker was going to strike him with the knife. Parker emphasized that she had not intended to kill him. Although she "didn't think he was going to really hurt me," Parker was uncertain whether he might hit her and wanted to make certain that he did not.

While we held as a matter of law in *Smith, supra,* and *Byrd, supra,* that the insureds' deaths were not accidental, those cases are distinguishable from this case. In both *Smith* and *Byrd,* the insureds were armed with deadly weapons and should have foreseen that the persons they threatened with the weapons might respond with deadly force. Reasonable persons would agree that one could reasonably foresee the danger of death or great bodily injury where one employs deadly force in attacking another.

Given the evidence, we hold that the trial court erred in deciding as a matter of law that Harris' death was not an accident. Whether Harris should have anticipated that his disciplining Brenda or his pushing Parker would lead to a violent reaction presents a factual issue dependent on the relationship of the parties and the circumstances of the incident. Therefore, the judgment of the trial court will be reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*