662 F.2d 1084
 INTERNATIONAL UNDERWRITERS, INC., Appellee,
v.
The HOME INSURANCE COMPANY, Appellant.
Susanne L. MONTGOMERY, Administratrix of the Estate of H.
Eugene Montgomery, Appellee,
v.
The HOME INSURANCE COMPANY, Appellant.
 No. 80-1814.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 5, 1981.
Decided Oct. 30, 1981.
 
 C. Torrence Armstrong, Alexandria, Va. (Boothe, Prichard & Dudley, Alexandria, Va., on brief), for appellant.
 Wyatt B. Durrette, Jr., Fairfax, Va. (Michael C. Montavon, Maloney & Chess, Fairfax, Va., on brief), for appellees.
 Before WINTER, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 This case arises from the unfortunate death by asphyxiation of plaintiffs' decedent. The insurance company carrying two accident policies on the decedent refused to pay the policies' beneficiaries after concluding that the death was not an accident. The beneficiaries sued in a Virginia circuit court, and the cases were removed under diversity jurisdiction to the district court, which held that the death was accidental under Virginia law. International Underwriters, Inc. v. Home Insurance Co., 500 F.Supp. 637 (E.D.Va.1980). The insurance company appealed, and we reverse.
 
 
 2
 Decedent's wife found his body hanging from a rope and noose suspended from the ceiling of an upstairs room of their home. 500 F.Supp. at 638. Neither party disputes the following description of events that led up to the death:
 
 
 3
 "... was attempting, while masturbating, to induce partial asphyxia by means of a hangmen's noose attached to a pulley which he could control by means of a separate rope. It is well documented that partial loss of oxygen intensifies the sensations of orgasm. The pulley system was designed ... to protect him from asphyxiation if he lost consciousness since he would then lose his grip on the separate rope and the pressure on the noose would abate, allowing his autonomous nervous system to restore his breathing. Apparently the pulley system jammed when ... (the decedent) lost consciousness and failed to release pressure from his neck."
 
 
 4
 There is no claim that the death was caused by suicide, homicide or natural causes.
 
 
 5
 Accident policies issued by Home Insurance Company and owned by the deceased and his employer, International Underwriters, Inc., provided for payment:
 
 
 6
 for loss from injury, to the extent herein provided. 'Injury' means accidental bodily injury sustained by a Covered Person during the term of this Policy, which results directly and independently of all other causes in a loss arising out of the hazards defined in 'Description of Hazards.' (Injury includes death under the policies.)
 
 
 7
 The policy also provided, under the label "Exclusions," that:
 
 
 8
 This policy does not cover any loss caused by, contributed to or resulting from: (1) intentionally self-inflicted injuries...
 
 
 9
 The district court concluded that the death resulted from the malfunctioning of the pulley system and thus the death was an accident, making Home liable under the terms of the policies. We believe the district court misinterpreted Virginia law with respect to the definition of accident.
 
 
 10
 The Virginia Court has considered on several occasions whether particular injuries were accidents for insurance purposes. In Smith v. Combined Insurance Company of America, 202 Va. 758, 120 S.E.2d 267 (1961), the insured died when the barn in which he was hiding from police caught fire after tear gas cannisters were hurled into the barn. Faced with the question of whether the insured's death was by accident, the court said:
 
 
 11
 In Ocean Accident & Guarantee Corp. v. Glover, 165 Va. 283, 285, 182 S.E.2d 221, 222, we adopted this definition:
 
 
 12
 'Accident: An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency, often; and undesigned and unforeseen occurrence of an afflicted or unfortunate character; casualty, mishap; as, to die by accident.'
 
 
 13
 The generally accepted rule is that death or injury does not result of an accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury.
 
 
 14
 202 Va. at 760-61, 120 S.E.2d at 268. The court ruled that the insured knew or should have known that death or serious injury was a probable consequence of his action and thus his death was not an accident within the meaning of the policy. Id. at 762, 120 S.E.2d at 269.
 
 
 15
 The Virginia Court has followed the above quoted language from Smith in Wooden v. John Hancock Mutual Life Insurance Co., 205 Va. 750, 139 S.E.2d 801 (1965) (not an accident when insured visited home of estranged wife and was shot following argument), and Byrd v. Life Insurance Co. of Virginia, 219 Va. 824, 252 S.E.2d 307 (1979) (insured could have foreseen possibility of injury when he visited home of girlfriend's ex-boyfriend); see also Harris v. Bankers Life & Casualty Co., --- Va. ---, 278 S.E.2d 809 (1981) (remanding to determine whether insured should have reasonably foreseen that his actions would put him in danger of death or serious bodily injury).
 
 
 16
 While the Virginia Supreme Court has not considered whether a victim would foresee that death could result from commission of an autoerotic sexual act utilizing a noose, this court has considered the question under a virtually identical factual situation, also under Virginia law. In Runge v. Metropolitan Life Insurance Co., 537 F.2d 1157 (4th Cir. 1976), the victim unintentionally hanged himself with an electric cord while attempting to produce the same effect as the insured sought in the instant case. Id. at 1158. After discussing Smith and Wooden, the Runge court said:
 
 
 17
 Runge deliberately placed his neck into a noose which he himself had designed and constructed, having first locked the doors to prevent intrusion, and at a time when interruption was unlikely. He then intentionally and deliberately self-induced asphyxia by hanging himself in the noose, lost consciousness, and died. Death, under these circumstances, was a natural and foreseeable, though unintended, consequence of Runge's activity.
 
 
 18
 Id. 537 F.2d at 1159. Furthermore, we note that in what is apparently the only other reported case dealing with this factual pattern, a federal district court in Iowa, applying similar state law, denied recovery because a reasonable man would have recognized that death could result from his actions. Sigler v. Mutual Benefit Life, 506 F.Supp. 542 (S.D.Iowa 1981).
 
 
 19
 The district court in the instant case noted the Virginia Supreme Court decisions in Smith and Wooden but neither applied nor distinguished them. 500 F.Supp. at 639-40. The district court distinguished Runge because it said Runge concerned an accidental means policy, while the policy here covers accidental results. As well it distinguished Runge on its facts, noting that the Runge victim's system for restricting air flow did not have sufficient safeguards in case he should lose consciousness, while:
 
 
 20
 In contrast, the insured's pulley system in this case was designed to preclude the risk of death should unconsciousness approach, the fail-safe feature was designed to release the pressure on his neck and drop him to the floor.
 
 
 21
 500 F.Supp. at 640. We think these distinctions are not sufficient reasons for failing to find Runge quite persuasive. The overriding similarity in the two cases is that the insured in each case voluntarily placed his head in a noose with the intention of restricting the air flow to the point of asphyxia, loss of consciousness. Neither victim intended that his noose system would cause death, but it cannot be said that either failed to realize the risk of death or serious bodily injury naturally resulting from voluntarily induced unconsciousness with a noose around the neck, restricting blood and air flow.
 
 
 22
 The district court relied upon, and the plaintiffs base a principal argument on, differences between the policy language in Runge and that here. The Runge opinion involved a policy that would pay for fatal injuries sustained "solely through violent, external and accidental means." 537 F.2d at 1158. Plaintiffs contrast this accidental means policy with what they characterize as an accidental results policy in the instant case. And it does appear that Virginia may recognize a difference between accidental means and accidental results policies, the former being more restrictive. See Newsoms v. Commercial Casualty Insurance Co., 147 Va. 471, 475, 137 S.E. 456, 457 (1927); Smith v. Combined Insurance Co. of America, 202 Va. 758, 761, 120 S.E.2d 267, 269 (1961).[1] While Home argues that this distinction is no longer valid, it is unnecessary for us to reach the question. Rather, we note that the part of the Smith opinion we have quoted above applies to injuries that result from "accident or accidental means." 202 Va. at 761, 120 S.E.2d at 268 (emphasis added). The fact that the Smith opinion did not differentiate between the types of policies at this point, and the lack of significant dissimilarity between the policy in Smith and the instant case, persuades us that the Smith opinion should apply here.[2] In Runge we applied the law as stated in Smith to the particular facts of that case. The facts here are the same with the insignificant addition of the fail safe feature of the noose. We think the same result should obtain.
 
 
 23
 Because the decedent voluntarily placed his neck in the noose and tightened the same to the point where he lost consciousness, we think his death was the natural result of a voluntary act unaccompanied by anything unforeseen except death or injury. Smith, 120 S.E.2d at 268. He is bound to have foreseen that death or serious bodily injury could have resulted when he voluntarily induced unconsciousness with a noose around his neck. We are thus of opinion that his death was not an accident under Virginia law and that judgment should be for the defendant.
 
 
 24
 Having decided that the death was not due to an accident, it is unnecessary for us to consider other policy defenses, and we express no opinion on any other question.
 
 
 25
 The judgment of the district court is accordingly
 
 
 26
 REVERSED.
 
 
 
 [1]
 This statement should not be read as expressing our opinion that the Virginia Court has definitely recognized a difference between accidental means and accidental results insurance policies. In neither Smith nor Newsoms was the court trying to distinguish between the types of policies, and in both cases the language indicating the possibility of a difference appears in quotes from courts of other states rather than in statements by the Virginia Supreme Court. Cf. Walker v. Metropolitan Life Insurance Co., 272 F.Supp. 217, 220 (S.D.W.Va.1967) (West Virginia has adopted differentiation between "accidental means" and "accidental reasons")
 
 
 [2]
 Plaintiffs have sought to characterize the Smith insurance policy as an accidental means policy because it covered injuries "effected in any accident," while the policy at issue here uses the term "accidental bodily injury." We think this is an insignificant difference. Furthermore, we do not agree that the Virginia Court characterized the Smith policy as an accidental means policy; rather, its specific holding was that "... death was not effected by 'accident' within the meaning of the policy." 120 S.E.2d at 269