**Robert PATCH, Jennifer Patch, minors, by their next friend and mother Terry Patch, Appellant,**

v.

**The METROPOLITAN LIFE INSURANCE COMPANY, INC., Appellee.**

No. 83–1417.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1984.

Decided March 27, 1984.

E. Robert Giammittorio, Alexandria, Va. (Delaney & Giammittorio, Alexandria, Va., on brief), for appellant.

Alvin Pasternak, New York City (William J. Toppeta, New York City, on brief), for appellee.

Before RUSSELL and HALL, Circuit Judges, and ROSENN, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, Sitting by Designation.

PER CURIAM:

The sole issue presented by this case is whether unintentional death from a self-administered overdose of heroin constitutes loss of life by "accidental means" under an insurance policy. The decedent, Paul W. Phillips, was covered at the time of his death by the Federal Employees' Group Insurance Program, administered by defendant Metropolitan Life Insurance Co. The policy in question provides for an additional $18,000 indemnity beyond the basic coverage in case of death "solely through violent, external and accidental means ... independently of all other causes," and contains several specific exclusions to coverage, including one for "intentional self-destruction or intentionally self-inflicted injury." Defendant has paid the beneficiaries of the policy, Robert and Jennifer Phillips, the $36,000 face value, but has refused to pay the additional benefits for death by "accidental means," and plaintiff Terry Patch, as guardian of the minor beneficiaries, brings this action to collect those benefits. Plaintiff appeals from the District Court's grant of summary judgment to defendant.

Paul Phillips died on February 9, 1982 due to a voluntarily injected overdose of heroin. The medical examiner's report listed the cause of death as "Morphine Poisoning," and the examiner described the manner of death as "accidental," as distinguished from suicide. Police advised Patch that the case would be closed as an "accidental overdose of narcotics."

Phillips had used heroin previously, though he was not an addict. Patch's testimony before the District Court indicated that Phillips recognized heroin to be a dangerous drug, though he thought that he could handle it. One of Phillips' friends had died from heroin use in June 1976, and another had almost died from an overdose earlier. The District Court found that "the facts are not in dispute that the decedent

was aware of the danger of the use of heroin."

Because our jurisdiction rests on diversity of citizenship, Virginia's substantive law is controlling. The general principles of Virginia insurance law applicable to this case are clear:

> "The generally accepted rule is that death or injury does not result from accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury."

*Smith v. Combined Insurance Co. of America,* 202 Va. 758, 120 S.E.2d 267, 268 (1961), *quoting* 29A Am.Jur. *Insurance* § 1167. Several Virginia cases have elaborated on this principle in dealing with deaths as the result of violent encounters, establishing that foreseeability of consequences and not intent of the insured is the crucial inquiry.

> "[I]f the insured voluntarily provokes or is the aggressor in an encounter, and knows, or under the circumstances should reasonably anticipate, that he will be in danger of death or great bodily harm as the natural or probable consequence of his act or course of action, his death or injury is not caused by an accident within the meaning of such a policy."

*Smith,* 202 Va. 758, 120 S.E.2d 267, 269. *Accord, Harris v. Bankers Life and Casualty Co.,* 222 Va. 45, 278 S.E.2d 809, 810 (1981); *Byrd v. Life Insurance Co. of Virginia,* 219 Va. 824, 252 S.E.2d 307, 310 (1979); *Wooden v. John Hancock Mutual Life Insurance Co.,* 205 Va. 750, 139 S.E.2d 801, 805 (1965). These precepts are evidently applicable to all forms of accident insurance policies, whether the term "accident" or "accidental means" is employed by the insurer.[1]

Two of our previous decisions, applying these rules of Virginia insurance law, have concluded that death from "autoerotic hanging" is not accidental, under the "natural or probable consequence" analysis. In *Runge v. Metropolitan Life Insurance Co.,* 537 F.2d 1157 (4th Cir.1976), the decedent had sought to heighten the experience of masturbation by stimulating certain nerve centers through partial asphyxiation, placing his head in a noose at the end of a cord, so that his feet barely touched the ground. Upon reaching orgasm his body relaxed as he lost consciousness, and he was strangled. The decedent's beneficiary sought to collect the double indemnity on an "accidental means" insurance policy. This court found that death, although unintended, was a natural and probable consequence of the insured's conduct. 537 F.2d at 1159. *International Underwriters, Inc. v. Home Insurance Co.,* 662 F.2d 1084 (4th Cir.1981), presented similar facts, with the variation that a more safety-conscious insured had designed a pulley system through which he controlled his rope and noose, to protect him if he lost consciousness. Unfortunately, the mechanism jammed. The policy under which the decedent was insured was apparently of the accidental results rather than accidental means sort. Nonetheless, we held that the death was not an accident under Virginia law, because the insured was "bound to have foreseen that death or serious bodily injury could have resulted when he voluntarily induced unconsciousness with a noose around his neck." 662 F.2d at 1087.[2]

---

**1.** Most cases from other jurisdictions deciding whether accidental death benefits can be collected for death from a drug overdose have turned on the question of whether there is a valid distinction between the concepts of accidental results and accidental means. *See, e.g. Jackson v. National Life & Accident Insurance Co.,* 130 Ga.App. 208, 202 S.E.2d 711 (1973) (heroin); *Gordon v. Metropolitan Life Insurance Co.,* 256 Md. 320, 260 A.2d 338 (1970) (heroin); *Mansbacher v. Prudential Insurance Co. of America,* 273 N.Y. 140, 7 N.E.2d 18 (1937) (velanol); *Beckham v. Travelers Insurance Co.,* 424 Pa. 107, 225 A.2d 532 (1967) (narcotics). We withheld judgment on whether Virginia would distinguish accidental means and accidental results policies in *International Underwriters, Inc. v. Home Insurance Co.,* 662 F.2d 1084, 1087 n. 1 (4th Cir.1981), and do so here as well, deciding the case on other grounds.

**2.** *Zurich General Accident & Liability Insurance Co. v. Flickinger,* 33 F.2d 853 (4th Cir.1929),

The dangers of heroin use are well known and require no lengthy elaboration. Indeed, one court has characterized use of this drug as·a "form of Russian roulette." *Jackson v. National Life & Accident Insurance Co.*, 130 Ga.App. 208, 202 S.E.2d 711, 712 (1973). Our previous interpretations of Virginia law in *Runge* and *International Underwriters* demonstrate that death will be found non-accidental where an insured has deliberately exposed himself to a substantial and foreseeable risk of serious injury or death, even if death is neither intended nor certain to result. We find that because Phillips voluntarily administered an overdose of heroin to himself, fully aware of the manifold risks involved, under Virginia law his death was a natural and probable consequence of his knowing actions and therefore did not occur by "accidental means."

We emphasize that our decision is a narrow one, and would not necessarily be valid under another state's differing precedents. Furthermore, we express no opinion as to whether death from less obviously dangerous drugs or from other risky activities, e.g., mountain climbing, would similarly be found non-accidental under Virginia law. It suffices to hold that, under the facts before us, the judgment of the District Court must be

AFFIRMED.

relied upon by plaintiff, is consistent with Virginia law and our conclusions in *Runge* and *International Underwriters,* as the death there was not a natural and probable consequence of the insured's knowing action, but the entirely unexpected consequence of ingesting a substance thought to be harmless, with no knowledge of its true deadly nature. *Pilot Life Insurance Co. v. Ayers,* 163 F.2d 860 (4th Cir.1947) was decided under West Virginia rather than Virginia law, and prior to the Virginia Supreme Court's *Smith* decision; accordingly, we need not address its continuing validity.