# CIRCUIT COURT OF CHESTERFIELD COUNTY

Erie Insurance Exchange

v.

Luigi P. Salvi
and Eileen D. Salvi

January 10, 2013

Case No. CL12-379

By Judge Herbert C. Gill, Jr.

The parties were before the Court on December 20, 2012, for a hearing on their cross-motions for summary judgment. Erie Insurance Exchange ("Erie") moves for summary judgment on the grounds that (1) the property damage claimed is not covered by the commercial general liability ("CGL") policy because it is not "an occurrence" and (2), even if the property damage claimed is "an occurrence" within the meaning of the policy, the contractual liability exclusion nonetheless bars coverage. *See* Pl.'s Mot. for Summ. J. ("Pl.'s MSJ") 7, 12. The Court recognizes that there were two different CGL policies in effect during the relevant time period. *See* Pl.'s Exhibits K and L. Because the applicable provisions in this case are identical, the Court will refer to them collectively as "the CGL policy."

Luigi and Eileen Salvi move for summary judgment on the grounds that (1) the property damage claimed is "an occurrence" covered by CGL policy, (2) the contractual liability exclusion does not apply to their claims because they sound in law, not in contract, and (3) their claims are also covered under Coverage B "Personal Advertising Injury." *See* Defs.' Mot. for Summ. J. ("Defs.' MSJ") 7, 9, 18. The Court took both matters under advisement to review the parties' arguments, as well as the applicable case law and statutes. The Court now delivers its ruling.

In Virginia, a trial court may enter summary judgment only if no material fact is genuinely in dispute. Va. Sup. Ct. R. 3:18 (2011). In considering a motion for summary judgment, a trial court must adopt those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason. *Dickerson v. Fatehi*, 253 Va. 324, 327, 484 S.E.2d 880 (1997). Summary judgment is appropriate only where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove. *See Campbell Cnty. v. Royal*, 283 Va. 4, 15, 720 S.E.2d 90 (2012).

To determine whether a liability insurer has a duty to defend, courts apply the "eight corners rule," meaning they look solely to (1) the language of the insurance policy to ascertain the terms of coverage and (2) the allegations of the underlying action to determine whether liability for any claims alleged therein are potentially covered by the policy. *See Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 46, 245 S.E.2d 247 (1978). Insurance policies are contracts whose terms must be interpreted in accordance with general principles of construction. *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 630, 449 S.E.2d 799 (1994). An ambiguous or unclear term or provision should be construed against the insurance company in favor of that interpretation granting coverage. *St. Paul's Fire & Marine Ins. Co. v. S. L. Nusbaum & Co.*, 227 Va. 407, 411, 316 S.E.2d 734 (1984). Where two constructions are equally possible, the construction most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer. *Id.*

However, "[i]f the policy language is unambiguous, [courts] do not resort to rules of construction. [They] simply apply the terms of the policy as written." *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 502, 423 S.E.2d 188 (1992) (citation omitted). Moreover, courts should consider the policy "as a whole," construing the policy "according to its terms and provisions." *Id.* at 153. An insurer is relieved of its duty to defend "only when it *clearly* appears from the initial pleadings that the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 331, 302 S.E.2d 529 (1983) (emphasis added).

There is a preliminary dispute among the parties regarding who bears the burden of proof in this case. As the party seeking coverage, the Salvis bear the burden of showing that their claims are covered under the terms of the policy. *See Maryland Cas. Co. v. Cole*, 156 Va. 707, 716, 158 S.E. 873 (1931) ("The burden is upon the policyholder to bring himself within the terms of the policy."). Once the Salvis prove that their claims are covered, the burden shifts to Erie to prove any affirmative defenses or to show that

an exclusion precludes coverage. *See White v. State Farm*, 208 Va. 394, 396, 157 S.E.2d 925 (1967).

*Issue 1: Whether the Property Damages Claimed Are "an Occurrence" Covered by the CGL Policy*

Section I, Coverage A, "Bodily Injury and Property Damage Liability" outlines the terms of coverage under the policy, stating:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

> b. This insurance applies to "bodily injury" and "property damage" only if: (1) *The "bodily injury" or "property damage" is caused by an "occurrence"* that takes place in the "coverage territory;" and (2) The "bodily injury" or "property damage" occurs during the policy period.

Pl.'s MSJ Ex. K, at E00082, and Ex. L, at E00719. The term "occurrence" in the policy is defined as "an accident, including continuous or repeated exposure to substantially the same general hazardous conditions." *Id.* at E0093, Ex. L, at E00730. "Property damage" under the policy is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time the "occurrence" caused it.

*Id.* at E0094, Ex. L, at E00730. Thus, whether there is coverage in this case turns on whether the structural damage to the Salvis' home, which was caused by the defective workmanship of a subcontractor, is "an occurrence" under the CGL policy. While the Supreme Court of Virginia has never ruled on the issue, the Court has provided some guidance as to what constitutes "an occurrence" or "an accident" in the context of a CGL policy: "an accident is [a]n event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." *Harris v. Banker's Life & Cas. Co.*, 222 Va. 45, 46, 278 S.E.2d 809 (1981) (citation omitted).

The Court is aware of only two cases in which courts, applying Virginia law, addressed the issue of whether the damage a subcontractor's defective workmanship causes to otherwise nondefective work constitutes "an

occurrence" under a CGL policy. *See generally Stanley Martin Cos., Inc. v. Ohio Casualty Group*, 313 Fed. App'x. 609 (4th Cir. 2009) (unpublished); *RML Corp. v. Assurance Co. of Am.*, No. CH02-127 (Va. Cir. Dec. 31, 2002).

*RML Corp. v. Assurance Co. of America* concerned whether a CGL policy covered structural problems in a condominiums project caused by defects in an exterior cladding provided by subcontractor Dryvit Systems. *RML Corp.*, at 1. The *RML* court granted summary judgment in favor of the insurer on two grounds, first, the court found that the general contractor's liability to repair the buildings "did not result from an 'accident,' but simply from its failure to satisfy its obligations under the contract." *Id.* at 4 (citation omitted). It went on to state that "[d]efective workmanship, standing alone, is not the result of an 'occurrence.' A breach of contract causes defective workmanship." *Id.* Accordingly, the court found that the damages claimed were not "an occurrence" so as to trigger coverage under the policy. *Id.*

The *RML* court continued by stating that, even if there was "an occurrence," exclusions in the policy nonetheless precluded coverage. *Id.* Specifically, the court pointed to exclusion (j), which excludes from coverage property damage to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations if the 'property damage' arises out of those operations;" or "that particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." *Id.* at 4-5.

The court, synthesizing these two grounds for granting summary judgment, reasoned that the policy's exclusions informed the meaning of the term "occurrence" under the CGL policy. Because defective workmanship is a breach of contract (and therefore not "an occurrence"), and because exclusion (j) includes circumstances amounting to defective workmanship, the court believed the policy explicitly excluded a breach of contract claim from coverage. *See id.* at 5. This case is cited by Erie as grounds for granting summary judgment in its favor.

The Fourth Circuit, sitting in diversity jurisdiction and applying Virginia law, reached the opposite conclusion in *Stanley Martin. See generally* 313 Fed. App'x. 609. The subcontractor in *Stanley Martin* supplied defective wood trusses to the general contractor for a townhouse construction project. *Id.* at 611. The issue before the court was whether the spread of damage from the defective trusses to the nondefective surrounding components of the townhouses was "an occurrence" covered under the CGL policy. *See id.* at 611-12. The Fourth Circuit held that any spread of damage to nondefective parts of the houses was an "unintended accident," and thus "an occurrence" covered by the policy. *Id.* at 614. In support of its holding, the court reasoned that "as delivered per the construction contract, those components were defect-free such that their subsequent damage was unexpected." *Id.* at 612

(citation omitted) (internal quotation marks omitted). The Salvis argue that Erie's reliance on *RML* is "misguided" because *Stanley Martin* explicitly "rejected" the *RML* court's holding. Def.'s MSJ, at 13. According to the Salvis, *Stanley Martin* is controlling and supports an award of summary judgment in their favor. *Id.* at 16.

Contrary to the Salvis' argument, *Stanley Martin* did not reject *RML*. Rather, the Fourth Circuit distinguished *RML*:

> [*RML*] holds that a general contractor is responsible for its subcontractor's defective workmanship, such that any defective work, as well as any damage it may cause to nondefective components is foreseeable and therefore not an occurrence. *The language of the policy at issue [in RML] supports this conclusion because [exclusion j(5)] "specifically excludes any property damage to real property that arises out of the operations by a subcontractor on behalf of [the general contractor]."* The Ohio policy, in contrast, contains no such exclusion.

313 Fed. App'x. at 613, n. 1 (emphasis added). The *Stanley Martin* court recognized that exclusion j(5) narrowed the breadth of the meaning of the term "occurrence" under the *RML*'s CGL policy excluded from its definition damage caused by a subcontractor's defective workmanship. *See id.* at n. 2 (CGL policy exclusions and exceptions "give insight into the baseline definition of operative words from which parties and courts interpreting [the policies] should operate."); *see also Nationwide Mut. Ins. Co. v. Wenger*, 222 Va. 263, 267, 278 S.E.2d 874 (1981) ("[The exclusion] does not extend or grant coverage. To the contrary it is a limitation or restriction on the insuring clause."). Because the *Stanley Martin* CGL policy did not contain exclusion j(5), the court applied a broader, or less restricted definition of the term "occurrence," concluding that damage caused by a subcontractor's defective workmanship to nondefective components of a general contractor's project fell within the scope of coverage. Accordingly, the *Stanley Martin* court held that the property damage caused by the subcontractor was "an occurrence" covered by the CGL policy.

Importantly, exclusion (j) in CGL policy at issue in this case is identical to exclusion (j) in the *RML* case. For this reason, the Court holds that the structural defects caused to otherwise nondefective components of the Salvis' home by the subcontractor's defective workmanship were not an "occurrence" under the terms of the policy. Moreover, even if the Court were to find that these circumstances amounted to an "occurrence," exclusion (j) would nonetheless preclude coverage for the damages claimed. Finding that there was no "occurrence" in this case and that, even if there was, exclusion (j) precludes coverage, the Court makes no determination regarding the

contractual liability exclusion relied upon by Erie. Therefore, summary judgment is granted to Erie on the breach of express warranty claim.

*Issue 2: Whether Coverage Is Afforded under the Advertising Injury Provision of the CGL Policy for Alleged False Statements Negligently Made by the Insured in Marketing Its Product*

The Salvis allege that their claims are also covered under Coverage B, "Personal and Advertising Injury Liability." Specifically, they argue that "[t]he CGL provides coverage for the allegations in the complaint related to coverage for the negligently made statements that Pacific Mutual backed the warranty, when in fact it was Western Pacific Mutual Insurance Company, A Risk Retention Group." Defs.' MSJ, at 7. These allegations are located in Count I of the Salvis' amended complaint. As noted by Erie in its Brief in Opposition, Count I was dismissed with prejudice by Court Order entered on October 19, 2011. *See* Pl.'s Brief in Opposition to Defs.' Mot. for Summ. J. 4; *see also* Pl.'s Ex. G (copy of October 19th Order). Finding that the Salvis are no longer entitled to recover on Count I, the Court declines to address the merits of this claim. Accordingly, the Salvis' motion for summary judgment is denied.