DONALD H. SPITZLI, JR.

V.

WINIFRED A. MINSON, EXECUTRIX, ETC., ET AL.

Record No. 821767

March 7, 1986

Present: All the Justices

*Glen A. Huff (Seawell, Dalton, Hughes & Timms*, on briefs), for appellant.

*Louis G. Paulson (Paulson, Fancher & Dockery*, on brief), for appellees.

CARRICO, C.J., delivered the opinion of the Court.

This is an appeal in a legal malpractice action brought by the plaintiffs, P. Elizabeth Austin[1] and Pearl Roumillat, against the defendant, Donald H. Spitzli, Jr., for damages resulting from the defendant's alleged negligence in failing to register certain condominium units owned by the plaintiffs. A jury trial resulted in a verdict in favor of the plaintiffs for $75,000, upon which the trial court entered judgment. The defendant appeals, asserting as a matter of law that the plaintiffs were guilty of contributory negligence and that the failure to register the condominium units was not the proximate cause of the plaintiffs' damages.

At the core of this controversy are the statutory requirements for the recordation and registration of condominium projects, as delineated in the Condominium Act, Code §§ 55-79.39 to -79.103.

---

[1] Mrs. Austin died during the pendency of this appeal.

In addition to recording the "condominium instruments" among the land records of the jurisdiction in which the condominium development is located, Code §§ 55-79.45 and -79.49, a condominium "declarant" must register the project with the Virginia Real Estate Commission, and no interest in a condominium unit may be offered for sale or sold prior to the time registration with the Commission is accomplished, Code § 55-79.88.

Stated in the light most favorable to the plaintiffs, the evidence shows that Mrs. Austin and her mother, Mrs. Roumillat, owned a parcel of land on East Ocean View Avenue in the City of Norfolk. The parcel contained a residence, which the two ladies occupied, and a separate six-unit apartment building.

In late 1978, city officials notified the plaintiffs that the structures on their property needed repairs to bring them into compliance with the city building code. Deeming the cost of repairs more than they wanted to put into the property, the plaintiffs devised a plan to demolish the existing structures and to replace them with a four-unit condominium project. Under this plan, the plaintiffs would retain one of the units as their home and sell the other three.

Mrs. Austin, a licensed real estate broker and appraiser, employed an architect to draft plans for the condominium project. The architect submitted his plans in January 1980, and thereafter the plaintiffs engaged a contractor to construct the project.

Mrs. Austin asked the contractor to recommend an attorney to handle the legal work connected with the registration of the condominium. The contractor recommended the defendant, and on February 18, 1980, the defendant addressed a letter to Mrs. Austin outlining the requirements of the Condominium Act and setting forth his proposal to secure registration of the condominium and to handle legal matters concerning both temporary and permanent financing of the project. The defendant offered "to do the entire package" for a fee of $2,750.

Mrs. Austin accepted the defendant's proposal and sent him a check for $500 as a retainer fee. She later paid him an additional $1,000. In the next several months, he prepared some of the condominium documents, closed a $251,800 construction loan the plaintiffs secured from a building and loan association, did the title work incidental to draws on the construction loan, and per-

formed other legal services connected with the condominium project.[2]

Construction work began in June or July of 1980. By late autumn of that year, one of the condominium units was complete, except for "a few minor things," and the plaintiffs moved into the unit shortly before Thanksgiving. At that time, two of the other units were "nearing completion," but work on the remaining unit had not begun. Construction of this latter unit commenced sometime between Thanksgiving of 1980 and January 9, 1981.

In late January 1981, Mrs. Austin attempted to list the units for sale with the Multiple Listing Service. She was informed that the units could not be listed because they had not been "registered with the state." When she asked the defendant when the units would be registered, he replied that registration would be accomplished "within a couple of weeks."

Four months later, the units were still not registered. By that time, Mrs. Austin "was getting frantic about the registration." Realizing she was "in trouble," she met with her contractor, the construction lender's representatives, and the defendant. During the meeting, the defendant mentioned that certain bonds would be required in connection with the registration of the condominium.[3] Mrs. Austin thought the defendant would take care of the matter, but, sometime in June, he told her she "should get the bonds." She contacted her insurance agent and turned over to the agent bond forms the defendant had obtained only recently from the Real Estate Commission in Richmond.

About the same time, the defendant asked Mrs. Austin for a check in the amount of $500 to cover the filing fee required for registration of the condominium. Mrs. Austin gave the defendant

[2] Among the services performed by the defendant was the recording of condominium papers in the land records of the City of Norfolk. This action, however, although not impermissible, was of questionable value. An expert witness called by the plaintiffs testified that recordation normally follows registration because, in "the overwhelming majority of cases," the Real Estate Commission requires changes and if recordation occurs first, then the condominium papers must be corrected and rerecorded. Furthermore, another expert called by the plaintiffs testified that the condominium papers recorded by the defendant were incomplete.

[3] Code § 55-79.58:1 requires the declarant of a condominium to file a bond with the Real Estate Commission conditioned upon completion of the common elements of the condominium project, and Code § 55-79.84:1 requires a bond similarly filed conditioned upon the payment of all assessments levied against condominium units owned by the declarant.

a check dated June 8, 1981, payable to the Real Estate Commission in the required amount.

Until mid-June, pursuant to the defendant's earlier advice, Mrs. Austin thought the registration process would take only "a couple of weeks." She then learned from another source that the process might take much longer. When Mrs. Austin questioned the defendant about the length of time involved, he told her "it would take 60 to 90 days" to secure registration after the application was filed.

The information that registration would take longer than she expected created a crisis for Mrs. Austin. Before receiving this information, she had interested several persons in purchasing condominium units, but she could not obtain binding contracts because registration had not been accomplished. Some prospective purchasers had signed agreements to purchase conditioned upon registration of the units.

Upon learning that registration would take sixty to ninety days after application was made and that the application had not yet been filed, one couple, Mr. and Mrs. Corbin, "backed out" of their conditional agreement to purchase. When the Corbins took this action, "everything just crumbled" for Mrs. Austin. She testified that registration had been "delayed so long" she "just ran out of money" and could not make the $3,500 per month interest payments during the time it would take to obtain registration. Consequently, Mrs. Austin stated, she told her insurance agent "to forget about the bond[s]" required for registration, notified the construction lender she would not be able to pay the July installment on her construction loan, and released the Corbins from their conditional agreement to purchase.

At the same time, Mrs. Austin told the defendant she no longer had sufficient funds in the bank to cover the $500 check she had given him on June 8 to cover the filing fee for registration.[4] The defendant had not used the check because he had not filed the application for registration.

Mrs. Austin then made one last effort to salvage the project. With the approval of the construction lender, she attempted to find a purchaser for the project "as a whole." Although she found "many interested purchasers," all decided against buying upon

---

[4] Later, Mrs. Austin discovered she had been mistaken in thinking she did not have sufficient funds in the bank to cover the check when she told the defendant it was "no good"; the check was "good . . . all along."

learning "they would have had to pay the $3,500 a month while [the project] was being registered."

When her salvage efforts proved unsuccessful, Mrs. Austin asked the construction lender on August 20, 1981, to foreclose on its deed of trust so she could "get out from under . . . the burden . . . this was putting upon [her]." Foreclosure occurred several months later, and the construction lender became the successful bidder at the foreclosure sale.

On appeal, the defendant does not question the jury's finding that he was negligent in failing to register the plaintiffs' condominium project. He contends, however, that the plaintiffs were guilty of contributory negligence as a matter of law in failing to provide the filing fee and bonds required for registration.

The defendant also contends that his negligence did not as a matter of law proximately cause the plaintiffs' damages. The defendant argues that "registration (or lack thereof)" is irrelevant in this case. The defendant says it was the plaintiffs' theory that if the condominium project had been registered, then units within the unfinished project could have been sold in order to raise money to pay for the completion of construction. But, the defendant maintains, under Code § 55-79.58(b), a condominium project cannot be registered until all units or portions thereof are substantially complete. The plaintiffs' project was not substantially complete, the defendant asserts,[5] and under Code § 55-79.95, the plaintiffs would have been prohibited from using the funds of prospective purchasers to complete construction until registration had been accomplished. Therefore, the defendant concludes, the trial court erred in failing to rule in his favor as a matter of law upon the issues of contributory negligence and proximate cause.

■ These issues were submitted to the jury, however, under instructions granted the plaintiffs without any objection from the defendant. Although the defendant moved to strike the evidence both at the conclusion of the plaintiffs' case and at the close of all

---

[5] To support this assertion, the defendant states on brief that the plaintiffs' contractor admitted in his testimony the "condominium project was not substantially complete." What the contractor said, however, was that three units were "virtually completed after the first of the year, 1981" and that the fourth unit was "about three-fourths complete." Furthermore, one of the persons who inspected the project in the summer of 1981 with a view to purchasing it as a whole testified that the "matters to be completed on the construction were minimal," that three of the units were "essentially completed," and that the fourth needed "some small amount of work."

the evidence, we believe his failure to preserve his objections at the instruction stage constituted a waiver of any contention that the trial court erred in not ruling as a matter of law upon the issues of contributory negligence and proximate cause. Rule 5:21 (now Rule 5:25); *Hilton* v. *Fayen*, 196 Va. 860, 866, 86 S.E.2d 40, 43 (1955).

In *Hilton*, the issue on appeal was whether the trial court had erred in refusing to dismiss an action in debt "as having been improperly brought, because it was an action against an individual for a partnership debt." *Id.* at 865, 86 S.E.2d at 43. The defendant had moved to strike the evidence at the conclusion of the plaintiff's case and at the close of all the evidence. The plaintiff requested and was granted an instruction which told the jury that "partners are jointly and severally liable for the debts of a partnership" and that it should find against the defendant individually if it believed money "was loaned to the partnership, and . . . has not been repaid." *Id.* at 865, 86 S.E.2d at 42. With respect to this instruction, defense counsel failed to object and stated: "That would be about the only [instruction] I would want to put in." *Id.*

In affirming the trial court's approval of a verdict for the plaintiff, we said:

> The question whether the action could have been properly maintained against one of the members of the partnership without naming the remaining partners as defendants is interesting; but its consideration is not necessary here, in view of the instruction which both plaintiff and defendant asked for and induced the court to give. In requesting it, defendant waived all objections theretofore made, thereby eliminating all prior questions of error from our consideration. The instruction became the law of this case and as such is binding on the parties to this action.

*Id.* at 866, 86 S.E.2d at 43. We said further:

> Where both plaintiff and defendant have asked for and have induced the court to give an instruction upon a given theory of the law, neither will be permitted after a verdict to question that theory. In other words, the parties cannot invite the court to commit an error, and then complain of it. Right or wrong, the instruction given in this case became the law of

the case on that point, and was binding upon both the parties and the jury.

*Id.* at 867, 86 S.E.2d at 43.

In the course of the *Hilton* opinion, this Court noted the absence of a defense motion for a new trial or to set aside the verdict. *Id.* at 865, 86 S.E.2d at 43. The Court also noted the provision of Code § 8-225, now Code § 8.01-384(B), that the failure to make a motion for a new trial would not be deemed a waiver of any objections raised during trial if properly made a part of the record. The Court stated, however, that "when defendant failed to object to the instruction submitting the entire case to the jury, and failed to move the court to set aside the verdict and grant a new trial, she waived her right to assign error under Rule of Court 1:8 [now Rule 5:25]." *Id.* at 867, 86 S.E.2d at 43-44.

Here, the defendant did make a motion to set aside the verdict, but this does not save him from his failure to object to the instructions which submitted the issues of contributory negligence and proximate cause to the jury. In *Godsey v. Tucker*, 196 Va. 469, 84 S.E.2d 435 (1954), the defendant moved to set aside a verdict in favor of a husband for the death of his wife, the motion asserting that the husband was guilty of contributory negligence as a matter of law and thus barred from participating in any recovery for his wife's death. The trial court, however, had granted an instruction which permitted the jury to apportion the verdict among the husband and children of the deceased or to award the entire amount to any one of them. Noting that the defendant had failed to object to this instruction, this Court held that "[h]e cannot now be heard to say that a verdict arrived at in accordance with [the instruction] must be set aside." *Id.* at 475, 84 S.E.2d at 439.[6]

■ Of course, Rule 5:21 (now Rule 5:25) permits this Court to consider a point not properly preserved in order "to attain the ends of justice." We believe, however, that the ends of justice would not be served by considering the points raised by the de-

---

[6] In *Smith v. Insurance Company*, 202 Va. 758, 120 S.E.2d 267 (1961), an action on an insurance policy, the trial court set aside a plaintiff's verdict returned in accordance with instructions granted without objection. We affirmed, stating that we agreed with the trial court because the instructions were "incorrect and calculated to mislead the jury," *id.* at 762, 120 S.E.2d at 270, *and* the plaintiff was not entitled in any event "to maintain her action on the policy," *id.* Neither *Godsey* nor the present case even remotely resembles *Smith*, except in the lack of objections to instructions; hence, we follow *Godsey* and not *Smith*.

fendant in this appeal. Ample evidence supports the jury's finding that the defendant's negligence was the sole proximate cause of the plaintiffs' damages, and, hence, we would not disturb the finding in any event.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*