PRESENT: All the Justices

LAURENCE MARIA SMITH,
s/k/a LAURENCE MARIE SMITH

v. Record No. 180198

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
December 13, 2018

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals of Virginia ("Court of Appeals") erred when it found the evidence was sufficient to uphold a conviction of voluntary manslaughter in the Spotsylvania County Circuit Court ("trial court").

I. Facts and Proceedings

A. The Evidence at Trial

Laurence Maria Smith ("Smith") was tried by a jury upon indictments for the first-degree murder of her husband, Sean McVae Smith ("Sean"), and use of a firearm during the commission of a felony. Smith pled not guilty, and a four-day jury trial was held.

At the beginning of trial, the parties stipulated that Sean's death was not a suicide, that he was killed when a single bullet entered his mouth and struck his right carotid artery, and that at the time the gun was fired, the muzzle was at least four feet from Sean's body. Deputy Amanda Trippett ("Deputy Trippett"), testified that she answered a 911 call from Smith on the evening of March 16, 2015. A recording of the call was then played for the jury. During the call, Smith reported that she accidentally shot her husband. Smith told Deputy Trippett "I was just cleaning" the gun, and "I fired" it. Deputy Trippett asked if Sean was breathing, and Smith responded she did not know. Later during the call, Smith told Deputy Trippett that Sean was not breathing.

When Deputy Trippett asked where the gun was, Smith replied she did not know. Smith was crying and screaming hysterically during the call.

Deputy Hernando Tavarez ("Deputy Tavarez") responded to the house within three minutes of the 911 call and was the first to arrive at the scene. Deputy Tavarez testified that a small girl answered the door. Once he entered the home, Deputy Tavarez heard Smith say, "it's my fault, I should not have been playing with it." Deputy Tavarez then saw Smith coming downstairs from the second floor. Smith was hysterical, and her hands were covered in blood. Deputy Tavarez directed Smith to stay downstairs while he went to look for Sean. Deputy Tavarez found Sean lying face down at the top of the stairs. Sean was still alive, but he was unconscious and bleeding profusely. Rescue personnel then arrived, so Deputy Tavarez stayed downstairs with Smith and her two young daughters. Deputy Tavarez asked Smith where the gun was, and Smith replied that the gun might be under her husband's body. The police later found the gun in the downstairs master bedroom. Deputy Tavarez testified that rescue personnel were unable to save Sean, and he died at the scene.

Deputy Brandon Handy ("Deputy Handy") testified that he arrived at the scene several minutes after Deputy Tavarez. Smith's two young daughters were at the entrance to the home screaming and crying. As Deputy Handy was getting the girls out of the house, Smith also came to the doorway. Smith's hands were covered in blood and she was screaming to Deputy Handy "I shot him" and "arrest me." Deputy Handy got Smith to sit down outside, and a neighbor came and took the children next door. Smith then told Deputy Handy that she had accidentally shot her husband. She thought her gun was empty when she squeezed the trigger.

Detective Earl Swift performed a gunshot residue test on Smith while she was waiting outside of the house. Smith was upset and crying while he performed the test. According to Det.

Swift, Smith kept saying things such as, "arrest me, I shot and killed my husband, I deserve to die because I killed by husband." The police determined that Sean was shot in an upstairs bedroom while standing by the window but that he walked into the hallway before collapsing. The gunshot residue test came back positive.

Smith was then taken to the police department and interviewed by Detective Frank Corona ("Detective Corona"). A video of Detective Corona's interview with Smith was offered into evidence by the Commonwealth. During the interview, Smith told Detective Corona that she and Sean had planned to have the flooring replaced in the upstairs spare bedroom. In preparation for installation of the new flooring, Smith had moved several things from the room. She had also moved the gun safe out of the closet into the room. Smith said that Sean came home from work and told her they needed to remove the guns from the safe before moving it any further. Sean and Smith emptied the gun safe, and then Sean sent Smith downstairs to their bedroom to get her "peashooter." Smith explained the "peashooter" was a tiny gun she kept in her purse. According to Smith, Sean told her "don't forget to uncock it," and "don't fuck around." Smith told Detective Corona that she had "popped out the magazine," racked the slide back, and saw a bullet eject from the gun when she was in the bedroom. Smith stated that she believed the gun then was empty. When Smith brought the gun upstairs, her husband asked if she did "like I told you."

Smith told Sean "see, it's empty" and pulled the trigger to show him it was unloaded. Smith explained to Detective Corona that she thought the gun was empty when she pulled the trigger. She wanted to show Sean she had the skills to disarm a weapon. Smith told Detective Corona that she "didn't have any aim." Later in the interview, however, she admitted that she aimed towards the window near where her husband was standing. Smith "dropped the gun" after shooting her husband, rushed to help him, and got his blood on her hands. Smith told Det.

Corona she then retrieved the gun and put it on her bed before she called 911 because her daughters were in the house. She then went back upstairs to try to help Sean.

When Detective Corona asked Smith whether she and her husband had argued prior to the shooting, Smith stated they had not. She then clarified they had been "fussing" at each other but not arguing. Later, Smith admitted that she and her husband had been "arguing about twenty minutes before all this went down" because she scratched one of his guns when she moved the gun safe. Smith also admitted that the argument upset her. However, Smith said she was no longer angry when she shot her husband. Detective Corona testified that blood was not visible on the gun when it was recovered. He also testified that a swab of Smith's gun tested negative for blood.

Smith told Detective Corona that she had taken a gun safety course and obtained a concealed weapon permit in 2011. She admitted that in that class she learned never to point her gun at a person unless she intended to kill. Smith told Detective Corona that she had been "stupid" and "retarded" because she did not follow the basic gun safety rules. She explained that Sean always took care of the weapons. Although Sean would let her load the weapons, she said when unloading he would "check[] and double check[] and triple check[] to make sure everything is empty." Smith stated she wanted to show Sean that he could trust her with the gun.

Smith's two young daughters were questioned by police on the evening of the shooting. A video of the daughters' statements was introduced by the Commonwealth without objection. Both daughters described their parents as "fighting" prior to the shooting. The youngest daughter stated she heard her parents "yelling" about her father's gun safe. The older daughter indicated her father may have been upset because one of the weapons was scratched. The older daughter recalled her mother saying she accidentally pulled the trigger when she was cleaning

4

her gun. She later stated, "I don't know if it's actually true." The older daughter also said that, after the shooting, she and her sister waited downstairs in the master bedroom before the police came.

Smith moved to strike the evidence when the Commonwealth rested. The trial court denied the motion. Smith's first witness was Kelly Johnson, a forensic biologist with the Virginia Department of Forensic Science, who testified that Smith's gun, the magazine, and the unspent cartridge were visually inspected and tested for blood, and no blood was found. Lauren Claytor, a forensic scientist in the firearm section of the Department of Forensics, testified that she tested the gun used in this case. She explained that this particular gun was capable of being fired with the magazine removed. She explained that the magazine would hold six bullets and the firearm would also hold one in the firing chamber. Claytor also testified that there would not be a discernible difference in the weight of the firearm if it was unloaded versus having one bullet in the chamber. However, she also testified that there is a "peephole" in the gun so a person can look to see if there is a cartridge in the chamber.

Patrick Lamb, a bloodstain pattern analyst with the Fredericksburg Police Department, also testified on Smith's behalf. Lamb explained that based on the blood patterns where Sean was shot, there did not appear to be any signs of a struggle between Smith and Sean. Smith also called Dr. Mary Beth Williams, an expert in trauma, to testify on her behalf. Dr. Williams testified that she watched the video of Smith's interview with Detective Corona, and Smith's behavior during that interview was consistent with someone who had just experienced a traumatic event. Dr. Williams also met with Smith on two occasions prior to trial, and she saw behavior in those meetings that was also consistent with someone who had experienced a traumatic event.

5

Smith then renewed her motion to strike at the close of all the evidence. She argued that the evidence proved she did not know the firearm was loaded and that the shooting was an accident. The circuit court again denied Smith's motion, finding that, while the jury could agree with Smith that the shooting was an accident, based upon the evidence presented the jury could also find that Smith acted with malice.

## B. The Jury Instructions

The Commonwealth and Smith submitted agreed upon jury instructions to the circuit court. Jury instruction 6, a "waterfall" instruction, included instructions for first-degree murder as well as the lesser included offenses of second-degree murder, voluntary manslaughter, and involuntary manslaughter. Jury Instruction 6 provided, in relevant part:

> Mrs. Smith is charged with the crime of first degree murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That Mrs. Smith killed Sean Smith; and
> (2) That the killing was done with malice; and
> (3) That the killing was willful, deliberate and premeditated.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged, then you shall find Mrs. Smith guilty of first degree murder . . . .
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first two elements of the offense as charged but you do not find beyond a reasonable doubt that the killing was willful, deliberate and premeditated, then you shall find Mrs. Smith guilty of second degree murder . . . .
>
> If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that Mrs. Smith killed Sean Smith and further:
>
> (1) That the killing was the result of an intentional act; and

6

(2) That the killing was committed while in the sudden heat of passion upon reasonable provocation;

then you shall find Mrs. Smith guilty of voluntary manslaughter
. . . .

If you find that the Commonwealth has failed to prove beyond a reasonable doubt the elements of voluntary manslaughter, but you find that the Commonwealth has proven beyond a reasonable doubt that:

(1) That Mrs. Smith killed Sean Smith; and
(2) That the killing, although unintended, was the direct result of negligence so gross, wanton and culpable as to show a callous disregard of human life;

then you shall find Mrs. Smith guilty of involuntary manslaughter
. . . .

If you find that the Commonwealth has failed to prove beyond a reasonable doubt any one or more of the elements of involuntary manslaughter, then you shall find Mrs. Smith not guilty.

In jury instruction 7, the jury was instructed that if it had reasonable doubt about the grade of homicide, then it should find Smith guilty of the lesser offense. The jury was also instructed that if it had reasonable doubt the Commonwealth had proved any of the offenses, then it should find Smith not guilty.

Jury instruction 9 informed the jury that if malice was absent, the killing could be no more than manslaughter. Jury instruction 10 defined heat of passion for the jury, and stated in relevant part:

Heat of passion excludes malice when that heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror or fear, so as to demonstrate an absence of deliberate design to kill or to cause one to act on impulse without conscious reflection. Heat of passion must be determined from circumstances as they appeared to defendant but those circumstances must be such as would have aroused heat of passion in a reasonable person. If a person acts upon reflection or deliberation, or after his passion has cooled or

7

there has been a reasonable time or opportunity for cooling, then the act is not attributable to heat of passion.

Jury instruction 12 explained that malice could be inferred from the use of deadly weapon. Jury instruction 14 explained that "[p]rovocation cannot be relied upon to reduce murder in the second degree to manslaughter, unless the provocation has so aroused the anger of the assailant as to temporarily affect his reason and self-control." Neither the Commonwealth nor Smith requested an instruction on the principle that words alone are insufficient provocation to reduce second-degree murder to voluntary manslaughter, and no such instruction was given.

## C. Motion to Set Aside

The jury found Smith guilty of voluntary manslaughter. Smith filed a motion to set aside the jury's verdict based on insufficient evidence to prove the elements of the offense of voluntary manslaughter. Smith argued that the Commonwealth had to prove each element of voluntary manslaughter, and specifically that the Commonwealth had failed to prove heat of passion upon reasonable provocation. As part of her argument that the Commonwealth failed to prove heat of passion upon reasonable provocation, Smith asserted that words alone are never sufficient to constitute a reasonable provocation. Smith argued that the evidence proved that she and Sean only had a brief argument and there was no physical altercation. She also argued that even if the argument created reasonable provocation, the evidence showed that she was not acting in the heat of passion at the time of the shooting. Accordingly, Smith asserted that the evidence was insufficient to prove voluntary manslaughter.

At the hearing on her motion to set aside, Smith agreed that the instruction on voluntary manslaughter was a correct statement of law and that she had not objected to it. Instead, her argument was that the evidence was insufficient to support a conviction for voluntary manslaughter. She argued there was no evidence this was an intentional killing, and no evidence

8

of heat of passion upon reasonable provocation. Smith reiterated that the evidence proved there was just a minor verbal argument between her and Sean; nothing that would qualify as reasonable provocation because "mere words are not enough for heat of passion."

The Commonwealth responded that Smith had waived this argument by agreeing to the jury instruction on voluntary manslaughter. The Commonwealth argued that the jury was entitled to find that Smith was angry and upset when she intentionally fired the gun at Smith, and that the evidence was sufficient to support her conviction. The Commonwealth asserted that if there was any error, Smith invited that error by allowing the voluntary manslaughter instruction to go the jury without objection.

The trial court asked why Smith did not object to a voluntary manslaughter instruction before it was given to the jury if there was no evidence to support such an instruction. Smith responded that she was not challenging the instruction, she was challenging the sufficiency of the evidence to support the conviction. The trial court then found there was sufficient evidence to support the jury's verdict and denied the motion. The trial court later sentenced Smith to ten years' imprisonment, in accordance with the jury's recommendation.

### D. Court of Appeals Opinion

The Court of Appeals, by published opinion, affirmed Smith's conviction. *Smith v. Commonwealth*, 68 Va. App. 399 (2018). The Court of Appeals assumed, without deciding, that reasonable provocation was an element of voluntary manslaughter based on the jury instruction given at trial. *Id.* at 414. Instead of deciding whether the evidence was sufficient to support Smith's conviction of voluntary manslaughter, the Court of Appeals relied on our decision in *Blankenship v. Commonwealth*, 193 Va. 587 (1952), and held that a rational factfinder could have found the evidence was sufficient to convict Smith of the higher offense of second-degree

9

murder. Therefore, she was not prejudiced by the jury's decision to find her guilty of the lesser offense of voluntary manslaughter. *Id.* at 415-17. The concurrence disagreed with the majority's analysis and set forth alternative bases for affirming Smith's conviction. *See id.* at 421-36.

Smith subsequently appealed to this Court, and we awarded an appeal on the following assignment of error:

1. The Court of Appeals erred in affirming the trial court's conviction of Appellant of voluntary manslaughter as the evidence was insufficient to prove Appellant intentionally killed Sean Smith and that Appellant acted in the "heat of passion" and "upon reasonable provocation."

## II. Analysis

### A. Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). This Court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Perkins*, 295 Va. at 327 (quoting *Williams v. Commonwealth¸* 278 Va. 190, 193 (2009) (emphasis in original)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Perkins*, 295 Va. at 327 (emphasis in original; internal quotation marks and citation omitted).

10

B. Jury Instructions

The jury in this case was given a "waterfall" instruction that set forth the elements the jury was required to find in order to convict Smith of first degree murder, second degree murder, voluntary manslaughter, or involuntary manslaughter. Jury instruction 6 was agreed upon by both parties. We have stated that "instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." *Wintergreen Partners, Inc. v. McGuireWoods, LLP*, 280 Va. 374, 379 (2010) (quoting *Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd.*, 237 Va. 649, 652 (1989)). The law of the case doctrine applies in criminal cases. *Jiminez v. Commonwealth*, 241 Va. 244, 249-50 (1991).

With respect to the offense of voluntary manslaughter, jury instruction 6 provided:

> If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that Mrs. Smith killed Sean Smith and further:
>
> (1) That the killing was the result of an intentional act; and
> (2) That the killing was committed while in the sudden heat of passion upon reasonable provocation;
>
> then you shall find Mrs. Smith guilty of voluntary manslaughter
> . . . .

The jury was also instructed that, "[h]eat of passion excludes malice when [it] arises from provocation that reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror, or fear" and that the provocation must have "so aroused the anger of the assailant as to temporarily affect his reason and self-control." Neither Smith nor the Commonwealth asked the trial court to instruct the jury that words alone are never sufficient provocation to reduce murder to manslaughter, even though this principle is well established in our case law, and there is a model jury instruction to this effect. *See Martin v. Commonwealth,*

184 Va. 1009, 1016-17 (1946), *and* Virginia Model Jury Instructions—Criminal, No. 33.550 ("Words alone, no matter how offensive or insulting they may be, are never sufficient provocation to reduce the offense of murder to manslaughter.").

Although Smith raised the issue that words alone are never sufficient provocation to reduce murder to manslaughter in her motion to set aside the verdict, that argument came too late. *See Spitzli v. Minson*, 231 Va. 12, 19 (1986) ("Here, the defendant did make a motion to set aside the verdict, but this does not save him from his failure to object to the instructions which submitted the issues … to the jury."). In this case, Smith expressly agreed to jury instructions that omitted the very legal principle on which she seeks to rely on appeal. We have clearly stated that an agreed jury instruction becomes the law of the case, even if it imposes "an inappropriate standard." *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 136 (1992). By failing to object to Jury Instruction No. 6, and by failing to request an instruction on the principle that words alone are insufficient provocation to support reducing murder to manslaughter, Smith waived any arguments on appeal with respect to defects in the wording of the voluntary manslaughter instruction, or as to whether an instruction on voluntary manslaughter should have been given at all, absent an instruction that words alone are insufficient provocation to support a conviction of voluntary manslaughter. *See id.*

C. Sufficiency of the Evidence

The jury in this case was instructed that it could find Smith guilty of voluntary manslaughter if it found that the killing was not malicious but was still intentional and committed while in the sudden heat of passion upon reasonable provocation. They were never instructed that a verbal argument alone is not sufficient to constitute reasonable provocation, and Smith never requested that the jury be so instructed. Jurors are not expected to know the law

12

independently.  *Breeden v. Commonwealth*, 217 Va. 297, 300 (1976).  Because the voluntary manslaughter instruction was agreed upon and is now the law of the case, we need not express an opinion as to the correctness of this instruction.  Rather, we consider whether the evidence was sufficient to support Smith's conviction for voluntary manslaughter based upon the instructions given in this case.

The Commonwealth presented evidence of Smith's familiarity with firearms and the methods of unloading and checking to see whether a weapon is loaded.  The jury could have considered the location of Sean's wound, and reject Smith's claim that she did not aim the gun, particularly in light of her ultimate admission that she aimed at the window near where Sean was standing.  In this case, the jury could have found that the act of pulling the trigger was an intentional act, and that this killing was therefore not an accident.  There was also evidence presented by the Commonwealth that Smith and Sean had been arguing, that Smith then went downstairs, got her gun, and came back upstairs and shot Sean.  The jury could have inferred that Smith was angry with Sean and came upstairs and shot Sean while under a heat of passion produced by the argument.  Under these circumstances, we cannot say that the evidence was insufficient to support the jury's verdict.

Because we find the evidence sufficient to support the conviction for voluntary manslaughter, we need not consider whether the Court of Appeals properly applied our prior decision in *Blankenship* when it determined the evidence supported a conviction of second degree murder and thereby justified Smith's conviction of the lesser offense of voluntary manslaughter.  Instead, because we conclude that the development of additional facts in this case is unnecessary and that the evidence in the record fully supports it, we will affirm the judgment of the Court of Appeals as the right result for a different reason.  *Robinson Family, LLC v. Allen*,

13

295 Va. 130, 141 n.9 (2018) (reviewing court may affirm the judgment of the lower court by applying the "right-result-different reason doctrine," but in doing so, the reviewing court "do[es] not examine the lower court's reasoning"); *Rickman v. Commonwealth*, 294 Va. 531, 542 (2017) (reviewing court may affirm the judgment of the lower court by applying the "right-result-different reason doctrine," but in doing so, the reviewing court "express[es] no view on the correctness of the lower court's rationale").

## III.  Conclusion

For the reasons stated, we will affirm the judgment of the Court of Appeals sustaining the conviction.

*Affirmed.*

JUSTICE KELSEY, with whom JUSTICE McCLANAHAN and JUSTICE McCULLOUGH join, concurring.

I fully agree with the Chief Justice's opinion.  The legal analysis, as well as its specific holding, hews closely to our traditional view that "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'"  *Commonwealth v. White*, 293 Va. 411, 419 (2017) (alteration and citation omitted).

I concur only to call attention to Judge Humphreys's historical analysis of the crime of manslaughter under English common law.  *See Smith v. Commonwealth*, 68 Va. App. 399, 421-36 (2018) (Humphreys, J., concurring).  His thesis begins with Blackstone's definition of manslaughter as "[t]he unlawful killing of another without malice either express or implied," *id.* at 423 (quoting 4 William Blackstone, Commentaries *190), and thereafter surveys how an anfractuous series of precedents seems to suggest that "'heat of passion upon reasonable provocation' has evolved into the only currently legally recognized factor in the Commonwealth

14

that negates malice," *id.* at 426.  The present case does not present an opportunity to test this thesis, but future cases no doubt will.