COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Judges Humphreys, Athey and Callins
Argued at Virginia Beach, Virginia


WILLIAM ADAM BOYD

                                              OPINION BY
v.        Record No. 0029-22-1        JUDGE CLIFFORD L. ATHEY, JR.
                                               NOVEMBER 15, 2022
CONSTANCE WEISBERG


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Juli M. Porto (Blankingship & Keith, P.C., on briefs), for appellant.

Kevin E. Martingayle (Herbert V. Kelly; Bischoff Martingayle, P.C.;
Jones, Blechman, Woltz & Kelly, P.C., on brief), for appellee.


William Adam Boyd ("Boyd") appeals from a jury verdict in the Circuit Court of the City of Virginia Beach ("trial court"). Boyd assigns error to the trial court's entry of judgment on the jury's verdict. He also assigns error to the trial court's decision to award attorney fees against him. Finally, he assigns error to the jury's $350,000 damages award assessed against him. Finding no error, we affirm the decision of the trial court.

I. BACKGROUND

In June 2011, Constance Weisberg ("Weisberg") executed an Agent Agreement ("Agreement") with To Charge, LLC ("To Charge Virginia"). Pursuant to the terms of the Agreement, Weisberg contracted to solicit potential purchasers of To Charge Virginia's credit card processing services. As consideration for the successful solicitation of an account, To Charge Virginia agreed to pay Weisberg a monthly residual commission of "fifty percent (50%) of the Gross Processing Revenue" for each account she successfully solicited while the account remained active. Shortly after Weisberg began securing accounts on behalf of To Charge

Virginia, she received commission checks that she contended failed to accurately reflect the proper amount of monthly commission earned pursuant to the Agreement.

First, by phone in 2011 and 2012, and then by email in 2013, Weisberg requested that Boyd, who was the sole and managing member of To Charge Virginia, permit her to review the residual reports detailing the activity on the accounts she had secured and the corresponding commission due therefrom. Since her repeated requests by phone and email were unsuccessful, in August of 2013, she met with Boyd to make her request in person. During that meeting, Boyd denied her request to review the residual reports and refused to explain why she was not being paid the proper amount of residual commission pursuant to the Agreement. Subsequently, by letter dated September 25, 2013, Boyd sought to terminate the Agreement based on his allegation that Weisberg had breached the Agreement by violating its confidentiality provisions.

As a result, by letter dated February 10, 2014, Weisberg, through counsel, notified To Charge Virginia that she intended to file suit to recover the unpaid commission and further demanded that Boyd produce the previously requested residual reports.[1] Four days later, on February 14, 2014, Boyd organized a Nevada limited liability company, ToCharge, LLC ("To Charge Nevada"), which he also managed as the sole member. Later that same day, To Charge Virginia transferred all its assets, contracts for services, independent contractor agreements, customer accounts, and goodwill to To Charge Nevada for the sum of $10. Following the transfer of all its assets, To Charge Virginia became insolvent.

Weisberg filed suit on May 27, 2014. Her final complaint[2] included, in relevant part, counts for fraudulent conveyance, voluntary conveyance, and breach of contract. For the

---

[1] In response, To Charge Virginia sued Weisberg for violating confidentiality provisions of the Agreement. However, that suit was dismissed with prejudice on June 3, 2021.

[2] Weisberg amended her complaint several times.

fraudulent conveyance and voluntary conveyance claims, she sought "judgment against To Charge Virginia, To Charge Nevada, Boyd, and VeriPay jointly and severally" in the amount of up to $350,000, "together with her costs and expenses, including attorney fees pursuant to Virginia Code § 55-82.1." In her breach of contract claim, Weisberg alleged that she had also been "damaged in the approximate amount of $150,000" and only sought "judgment against To Charge Virginia in the amount of [$350,000]."[3]

Almost four years later during the pendency of the litigation, on February 13, 2018, Boyd dissolved To Charge Nevada.[4] Boyd then executed an Asset Purchase Agreement, dated March 30, 2018, that purported to sell all of To Charge Nevada's assets, contracts for services, independent contractor agreements, customer accounts, and goodwill to VeriPay, LLC ("VeriPay") for $10. However, VeriPay did not exist on the date of that transfer. Finally, on June 14, 2018, Boyd apparently resurrected the previously dissolved To Charge Nevada and renamed the business VeriPay.[5]

During the jury trial, Weisberg testified that To Charge Virginia breached their Agreement and Boyd fraudulently conveyed all the assets of To Charge Virginia, to To Charge Nevada, then to the renamed VeriPay to hide the assets of To Charge Virginia because of their pending litigation. Weisberg originally sought to pierce the corporate veil, but later withdrew that argument. At the conclusion of Weisberg's case in chief, the corporate entities moved to

---

[3] After discovery, it was determined that the gross amount paid to To Charge Virginia by Weisberg's account between June 2011 and December 2016 was $ 574,737.30. Her half would have been $287,368.65. As she was only paid $34,922.77 during her employment, at trial she sought $252,445.88.

[4] The evidence in the record shows that Boyd held the assets personally from February 13, 2018, to March 30, 2018.

[5] To Charge Nevada and VeriPay seemingly never coexisted. Boyd's testimony was inconsistent regarding when VeriPay existed and how To Charge Nevada was "resurrected" after being dissolved.

strike Weisberg's breach of contract claim, and Boyd moved to strike the fraudulent conveyance and voluntary conveyance claims. Counsel for all the defendants contended that Weisberg had the burden of proving that she did not violate the Agreement and that she had not met that burden. Boyd also contended that Weisberg was not a "creditor" as required under the fraudulent or voluntary conveyance statutes. Finally, he argued that with respect to her various claims for damages in general, Weisberg had not proved her damages to a reasonable degree of certainty. The trial court denied the motions to strike. Following the conclusion of all the evidence, the motions to strike were renewed but the trial court again denied the motion. The trial court then reviewed the jury instructions and verdict form presented by the parties. Both Weisberg and Boyd agreed to the following instructions and verdict form given by the trial court prior to the closing statements:

Jury Instruction 27:

"Every assignment or transfer of property given with the intent to delay, hinder or defraud creditors, as to such creditor is void. Such transfers are considered as a fraudulent conveyance."

Jury Instruction 30:

> If you find that [Weisberg] proved badges of fraud, by clear and convincing evidence, when the assets of [To Charge Virginia], [were] assigned to [To Charge Nevada], a prima facia case of a fraudulent conveyance has been made and [Weisberg] is entitled to a presumption that the conveyance was in fact fraudulent. Unless William Adam Boyd disproves the fraud, by clear and convincing evidence, you shall find that the conveyance was fraudulent.

Verdict Form:

> We, the jury, having found that the contract was breached, further find that the transfer by William Adam Boyd of the assets of [To Charge Virginia] to [To Charge Nevada] was made with the intent to hinder, delay and defraud the plaintiff and assess damages against William Adam Boyd in the sum of $_____.

- 4 -

OR

> We, the jury, find that the conveyance was not made with the intent to
> hinder, delay or defraud [Weisberg].

> We, the jury, on the issues joined, find in favor of [Weisberg] on the breach of contract claim and assess damages in the sum of $_____ against _____.[6]

OR

> We, the jury, on the issues joined, find in favor of the defendants.

The jury instructions were read to the jury prior to closing arguments and provided in writing for their consideration during deliberations. During closing argument, Weisberg's counsel argued that

> [I]f you find that the evidence demonstrates that [the transfer] was fraudulent and done with the intent to hinder, delay, and defraud Ms. Weisberg, then you're entitled to render a verdict against Mr. Boyd personally because of his fraudulent acts, and you would be entitled to put a number on the penalty that you will impose upon Mr. Boyd for his actions. That number is clearly within your province. I will only give you some guidance and tell you that the complaint filed in this court seeks damages of $350,000 for what is absolutely atrocious conduct committed to defraud Ms. Weisberg from her commissions. I would just ask you not to exceed that amount. You can award zero. You can award $350,000. You can award anywhere in between. I think the $350,000 is more appropriate given the aggravated circumstances in this case.

At no point during Weisberg's closing argument did Boyd object to Weisberg's argument either as to form or substance. In fact, Boyd's counsel specifically referenced the verdict form and argued that the jury should not award damages against Boyd personally, stating, "[w]hen you get to the jury room, you will see this verdict form. There will be two pages. I submit the second page is irrelevant."

---

[6] As it was not entirely clear at trial which of Boyd's limited liability companies were still in existence, Weisberg asked the jury to award her damages jointly and severally against all three companies.

After the closing arguments, the trial court briefly explained to the jury their task in completing the verdict form by stating

> If you find that [Weisberg] has established the fraudulent
> conveyance as set forth in the instructions and in the verdict slip
> here, then the amount of damages, if any, that you determine are
> appropriate to award against [Boyd] for that fraudulent conveyance
> would be filled in in that blank, and your foreperson would sign
> and date it once again.

Boyd again failed to object to either the form or substance of the jury instructions or potential damages outlined in the verdict form. After their deliberations, the jury found for Weisberg and awarded damages by completing the verdict form as follows:

> We, the jury, having found that the contract was breached, further
> find that the transfer by William Adam Boyd of the assets of [To
> Charge Virginia] to [To Charge Nevada] was made with the intent
> to hinder, delay and defraud the plaintiff and assess damages
> against William Adam Boyd in the sum of $350,000.

> We, the jury, on the issues joined, find in favor of [Weisberg] on
> the breach of contract claim and assess damages in the sum of
> $225,445.88 against [To Charge Virginia], [To Charge Nevada],
> and [VeriPay].

At Boyd's request, the trial court polled the jury and each juror affirmed that the verdict reflected in the completed verdict form was, in fact, their verdict. The trial court then asked counsel, "before we discharge the jury, is there anything else that we need to address at this time?" Both parties, through their counsel, replied that there was not. The trial court then entered judgment on the verdict, the jury was released, and the trial concluded on June 17, 2021.

Not before August 31, 2021, when Boyd moved for judgment notwithstanding the verdict and for reconsideration of the final judgment order, did Boyd raise any issue with the jury instructions and verdict form. Following oral argument, the trial court denied both motions. On September 2, 2021, Weisberg submitted an attorney fees affidavit to the trial court, and the final order was entered on December 17, 2021. In the final order, the trial court ruled that in addition

- 6 -

to the monetary damages awarded by the jury against Boyd and his corporate entities, Weisberg was also entitled to receive attorney fees in the amount of $149,041.90, jointly and severally, from To Charge Virginia and Boyd pursuant to Code § 55.1-403.  Boyd appealed from the final order.[7]

I. ANALYSIS

A. *Standard of Review*

"[W]here the trial court has declined to . . . set aside a jury verdict," this Court "consider[s] whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff."  *Ferguson Enters., Inc. v. F.H. Furr Plumbing, Heating & Air Conditioning, Inc.*, 297 Va. 539, 547-48 (2019) (first and second alterations in original) (quoting *Parson v. Miller*, 296 Va. 509, 523-24 (2018)).  "We will not set aside a trial court's judgment sustaining a jury verdict unless it is plainly wrong or without evidence to support it."  *Id.* at 548 (quoting *Parson*, 296 Va. at 524).

We review an award of attorney fees for abuse of discretion.  *Lambert v. Sea Oats Condo. Ass'n, Inc.*, 293 Va. 245, 252 (2017).  To the extent awarding attorney fees raises issues of statutory construction, we review them de novo.  *New Age Care, LLC v. Juran*, 71 Va. App. 407, 421 (2020) (citing *Bragg v. Bd. of Supervisors*, 295 Va. 416, 423 (2018)).

B. *The trial court did not err by denying Boyd's motion for judgment notwithstanding the verdict because Boyd expressly agreed to the jury instructions and verdict form.*

In his first assignment of error, Boyd argues that the jury's verdict is plainly wrong because his only involvement in the asset transfer between To Charge Virginia and To Charge

---

[7] Boyd only appealed the judgments rendered against him personally.  The limited liability companies did not appeal.  As such, the $252,445.88 awarded against To Charge Virginia, To Charge Nevada, and VeriPay for the breach of contract claim is not before this Court.

Nevada was as the limited liability companies' corporate representative. Boyd claims that, although he agreed to the jury instructions and verdict form, the trial court erred by not setting aside the jury's verdict since Weisberg previously withdrew her attempt to pierce the corporate veil. We disagree.

"[I]nstructions given without objection become the law of the case and thereby bind the parties in the trial court and . . . on [appellate] review." *Smith v. Commonwealth*, 296 Va. 450, 461 (2018) (quoting *Wintergreen Partners, Inc. v. McGuireWoods, LLP*, 280 Va. 374, 379 (2010)). Even if a party makes a motion to set aside the verdict, "this does not save him from his failure to object to the instructions which submitted the issues . . . to the jury." *Id.* at 462 (quoting *Spitzli v. Minson*, 231 Va. 12, 19 (1986)).

Here, Boyd "expressly agreed to jury instructions that omitted the very legal principle on which [he] seeks to rely on appeal." *Id.* On appeal, he argues that the instructions improperly imposed personal liability. However, he cannot contest the phrasing of the instructions and verdict form after agreeing to them. "We have clearly stated that an agreed jury instruction becomes the law of the case, even if it imposes 'an inappropriate standard.'" *Id.* (quoting *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 136 (1992)).

Boyd relies on *Smith v. Combined Insurance Company of America*, 202 Va. 758, 762 (1961), to support his contention that we must set aside the jury's verdict. Such reliance is misplaced. In that case, the Supreme Court held that "the [trial] court *may* reconsider the instructions, although not objected to, and if they are found to be incorrect and calculated to mislead the jury, *may* set aside the verdict." *Id.* (emphasis added). Here, the trial court denied Boyd's post-trial motion, choosing not to reconsider the jury instructions previously agreed to by the parties. Had the trial court exercised its discretion differently by finding the jury instructions and verdict form to be both incorrect and calculated to mislead the jury, it may have been within

its discretion to set aside the verdict, but the trial court was not required to do so as argued by Boyd on appeal.

Since jury instructions and verdict forms agreed to by both parties become the law of the case, "we consider whether the evidence was sufficient to support [the judgment] based upon the instructions given." *Smith*, 296 Va. at 462. Instruction 27 provided the jury with the elements necessary for finding a fraudulent conveyance. Instruction 30 detailed the burden of proof necessary to establish a fraudulent conveyance. No jury instruction was submitted to the trial court by Boyd or agreed upon by the parties that instructed the jury on the legal concepts Boyd now argues on appeal. Instead, the agreed upon jury instructions and verdict form permitted the assessment of damages against Boyd if the jury found that the elements of a fraudulent conveyance contained in Instruction 27 were met based on the evidence adduced at trial. The record also lacks any jury instruction submitted by Boyd on the limitations of personal liability in cases involving limited liability companies. Instead, the agreed upon instructions coupled with the agreed upon verdict form permitted the jury to impose personal liability on Boyd in this case. Instruction 30 even included the statement that "[u]nless *William Adam Boyd* disproves the fraud . . ." thereby signaling to the jury that Boyd could be held personally liable for the fraudulent conveyance.

Here, there was more than enough evidence to support the jury's verdict based on the instructions and applicable verdict form. After Boyd contracted with Weisberg, he received a letter notifying him that he and his first company (To Charge Virginia) were being sued by Weisberg for breach of contract. Boyd then created a second company (To Charge Nevada), and transferred all To Charge Virginia's assets to this newly formed Nevada company. During the pendency of the lawsuit, Boyd dissolved To Charge Nevada and later attempted to transfer its assets to a third company (VeriPay) that did not even exist at the time of the conveyance. He

then somehow "resurrected" the dissolved To Charge Nevada and renamed it VeriPay. The evidence of these multiple transactions is sufficient to support the finding by the jury that Boyd transferred the assets of the limited liability companies he controlled with the intent to defraud Weisberg.

We also disagree with Boyd's contention that his argument should be considered under Rule 5A:18's ends of justice exception. "We observe the general rule that, when an issue has been submitted to a jury under instructions given without objection, such assent constitutes a waiver of any contention that the trial court erred in failing to rule as a matter of law on the issue." *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 137-38 (1999). The very fact that Boyd "invited the error" by agreeing to the jury instructions and verdict form "renders Rule 5A:18's ends of justice exception inapplicable." *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010). "It can hardly be a 'grave injustice' . . . for a trial court to give an agreed upon jury instruction." *Id.* (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 513 (2009)). Even in cases where the error is waived, as opposed to invited, "our Rule 5A:18 jurisprudence confirms that '[t]he ends of justice exception . . . is narrow and is to be used sparingly.'" *Brittle*, 54 Va. App. at 512 (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). This is particularly true here as the "essential rights" implicated in the criminal context are not at issue in this case. *See Rowe v. Commonwealth*, 277 Va. 495, 503 (2009) ("We have held that application of the ends of justice exception is appropriate when the judgment of the trial court was error and application of the exception is necessary to avoid a grave injustice or the denial of essential rights."); *Jimenez v. Commonwealth*, 241 Va. 244, 251 (1991) (holding that a grave injustice occurred because the jury was not instructed properly on the elements of the crime and the Commonwealth failed to prove the omitted element); *Brittle*, 54 Va. App. at 517 ("If the record contains affirmative

evidence of innocence, or a lack of a criminal offense, we can conclude that a manifest injustice has occurred, and we can apply the ends of justice exception.").

In this purely civil matter, Boyd expressly agreed to the jury instructions and verdict form permitting the jury to impose the damages he now appeals. As a result of both his agreement to the jury instructions and verdict form, as well as his failure to object until long after the jury was released and the judgment was entered, the jury instructions and verdict form became the law of this case. Therefore, his arguments are waived, and we see no reason to apply the ends of justice exception to Rule 5A:18. *Witt v. Merricks*, 210 Va. 70, 72-73 (1969) (refusing to apply the ends of justice exception even though the unobjected to jury instructions incorrectly stated the law). Accordingly, the trial court did not err by denying Boyd's motion for judgment notwithstanding the verdict.

C. *The trial court did not err by awarding Weisberg attorney fees against Boyd because he was a "participant" in a fraudulent conveyance pursuant to Code § 55.1-403.*

In his second assignment of error, Boyd argues that because limited liability companies are legal entities that are entirely distinct from the members who compose them, when he signed the asset transfer documents as a managing member, he did not "participate" in the fraudulent conveyance. We disagree.

"Upon a finding of fraudulent conveyance pursuant to § 55.1-400, the court may assess sanctions, including such attorney fees, against all parties over which it has jurisdiction who, with the intent to defraud and having knowledge of the judgment, participated in the conveyance." Code § 55.1-403. Title 55.1 does not define what it means to "participate" in a fraudulent conveyance. "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Jones v. Von Moll*, 295 Va. 497, 504 (2018) (quoting *Hubbard v. Henrico*

- 11 -

*Ltd. P'ship*, 255 Va. 335, 340 (1998)). "We must presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice." *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quoting *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016)).

Thus, we understand "participate" as meaning "to take part or share in something."[8] Notably, the statute gives the trial court authority to assess attorney fees against *all* parties who participated in the conveyance. Contrary to Boyd's argument, it does not specify *in what capacity* the parties must participate. Since Boyd participated in the fraudulent conveyance between To Charge Virginia and To Charge Nevada, whether he participated as the managing member of To Charge LLC or in his personal capacity is irrelevant in this case. Since he acknowledges participating, the trial court did not err by assessing attorney fees against him.

D. *The trial court did not err by entering a final order consistent with the jury's verdict or denying Boyd's motion to reconsider because Boyd did not object to the verdict form.*

In his third assignment of error, Boyd argues that the trial court erred in assessing damages against him and that the evidence was insufficient to permit the jury to reasonably estimate Weisberg's damages. However, since Boyd failed to object before the jury rendered its verdict, but instead agreed to the verdict form that permitted a damages award on the fraudulent conveyance claim, we disagree.

"It is a well-established rule that under normal circumstances a trial court is under no obligation to amend or correct an instruction that contains a misstatement of law." *Atkins v. Commonwealth*, 257 Va. 160, 178 (1999). "[T]he failure to object to the nature of the verdict form[] at trial bar[s] consideration of that issue on appeal." *Powell v. Commonwealth*, 261 Va.

---

[8] Merriam-Webster, https://www.merriam-webster.com/dictionary/participate (last visited Nov. 14, 2022).

512, 542 (2001).  When a verdict form is not questioned until sometime after the jury is discharged, the appellant cannot complain of the defect on appeal.  *Rakes v. Fulcher*, 210 Va. 542, 549 (1970).

Here, Boyd did not move for summary judgment on the fraudulent conveyance claim.  In his motions to strike, he failed to argue that damages could not be awarded for a fraudulent conveyance claim.  And most importantly, Boyd agreed to both the jury instructions and verdict form.  He never objected during Weisberg's closing argument requesting the damages award or to the trial court's explanation concerning the verdict form which permitted the jury to award personal damages on the fraudulent conveyance claim.  Boyd failed to even respond to Weisberg's statement in closing argument that the jury was "entitled to render a verdict against Mr. Boyd personally because of his fraudulent acts" or that the jury "[could] award $350,000" for Boyd's "absolutely atrocious conduct."  Instead, in his own closing argument, Boyd disregarded the second page of the verdict form which listed damages for the fraudulent conveyance claim and advised the jury that this second page of the verdict form was "irrelevant."  "Decisions regarding trial strategy often require rejection of other potential strategies."  *Lenz v. Warden of Sussex I State Prison*, 267 Va. 318, 340 (2004).  As advanced by Weisberg's counsel during oral argument before this Court, Boyd seemingly chose an "all or nothing" approach which was within his province to decide.  Had Boyd wanted to object to the phrasing of the verdict form or the imposition of damages against him, he should not have agreed to the verdict form.  He also had the opportunity to raise the issue during closing arguments or before the jury was released.  The verdict form Boyd agreed to made it clear that if the jury found that Boyd breached his contract with Weisberg and transferred assets with the intent to defraud her, the jury was permitted to assess damages against Boyd.

Similar to his first assignment of error, Boyd raises these arguments for the first time on appeal.  For the same reasons as discussed previously, we find no reason to invoke the ends of justice exception and the arguments are waived.  Rule 5A:18; *Banks v. Mario Indus. of Virginia, Inc.*, 274 Va. 438, 451 (2007).

### III. CONCLUSION

For the aforementioned reasons, we affirm the decision of the trial court.

*Affirmed.*